IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MICHAEL J. NORTON<br>    Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No.: 4:10cv91<br>Jury |
| ASSISTED LIVING CONCEPTS, INC.<br>    Defendant. | §<br>§<br>§ | |

## NORTON'S FIRST AMENDED COMPLAINT [1]

Plaintiff Michael J. Norton sues his former employer, Defendant Assisted Living Concepts, Inc., for firing him on August 5, 2009 – *i.e.,* less than six (6) weeks after his return on July 1, 2009 from surgery/treatment for cancer.

### Nature of Case

1.  Norton brings three (3) claims. They are:

    A.   Count One – discrimination/retaliation (discharge) in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 et seq. ("FMLA"), and the regulations promulgated thereunder;

    B.   Count Two – discrimination (discharge) on the basis of an actual disability in violation of the Americans With Disabilities Act, including as amended by the ADA Amendments Act of 2008, 42 U.S.C. §12101 et seq. ("ADA"), and the regulations promulgated thereunder.

    C.   Count Three – pleading in the alternative, discrimination (discharge) on the basis of a perceived, a/k/a "regarded as" disability in violation of the Americans With Disabilities

---

[1] Leave of court is not necessary because the *Scheduling Order* (Doc. 1) at p. 1, no. 2 permits amendments without such leave if filed by December 7, 2010.

Act, including as amended by the ADA Amendments Act of 2008, 42 U.S.C. §12101 et seq. ("ADA"), and the regulations promulgated thereunder.

## Parties

2. Plaintiff Michael J. Norton ("Norton") is a citizen and resident of the State of Texas. He resides in Hopkins County, Texas, and he also resided there at the time of his discharge.

3. Defendant Assisted Living Concepts, Inc. ("ALC") is an active Nevada corporation. It has already appeared and answered. Further, ALC removed this action to this federal forum on March 2, 2010. *See* Def.'s Notice of Removal (Doc. 1).

## Jurisdiction

4. This Court has subject matter jurisdiction by reason of 28 U.S.C. §1331 (federal question).

5. This Court has *in personam* jurisdiction over ALC because Norton's claims for relief arose in Texas and ALC is amenable to service by this Court.

## Venue

6. Venue is proper in this judicial district and division because a substantial part of the events forming the basis of Norton's claims for relief occurred there. 28 U.S.C. §1391(b)(2).

## Material Facts

*BACK GROUND ON DEFENDANT ALC*

7. Between April 1, 2009 and August 6, 2009, ALC was a publicly-traded company (NYSE: ALC).

8. Between April 1, 2009 and August 6, 2009, ALC employed about 4,650 people in about 220 assisted living centers in some 20 states.

9. Between April 1, 2009 and August 6, 2009, ALC's facilities had a total of over 9,000 dwelling units that provided full-time housing for aging adults.

10. Between April 1, 2009 and August 6, 2009, ALC organized its facilities by what it called "regions."

11. Between April 1, 2009 and August 6, 2009, ALC organized its facilities by what it called "regions," one of which was Central Texas.

12. In May 2009, Central Texas was comprised of about 15 facilities with dwelling units. Those facilities were called "houses."

13. In May 2009, Central Texas was comprised of about 15 facilities with dwelling units. Those facilities were called "houses," one of which was called "Hopkins House," which was located at 890 Camp Street in Sulphur Springs, Hopkins County Texas 75482.

*NORTON'S EXEMPLARY PERFORMANCE*
*AS AN ALC EMPLOYEE*

14. In May 2009 ALC employed Norton as a "Resident Sales Manager" at its Hopkins House facility.

15. ALC's own records show that as of May 26, 2009, Hopkins House was 98% percent occupied.

16. ALC's own records show that as of May 26, 2009, the average occupancy for ALC houses in Central Texas was 69%.

17. ALC's own records show that as of May 26, 2009, Hopkins House had the highest percentage of occupancy of any ALC house in Central Texas.

18. **Exhibit A** is a true and correct copy of a document produced by or on behalf of ALC.

*NORTON CONTRACTS RENAL CANCER*
*AND TAKES LEAVE* TO *UNDERGO SURGERY/TREATMENT*

19. In April 2009, Norton was diagnosed with a cancerous tumor in his left kidney. Surgery to remove the tumor was scheduled for May 22, 2009.

20. Norton apprised ALC of his need for surgery and the reason therefor, and ALC responded by giving him medical leave.

21. Norton underwent surgery on his left kidney on May 22, 2009.

22. Norton took leave starting on May 22, 2009.

23. Norton took leave starting on May 22, 2009, and he was tentatively scheduled to return to work on July 1, 2009.

24. Norton took leave starting on May 22, 2009, and he returned to work on July 1, 2009.

25. Norton took leave starting on May 22, 2009, and he returned to work on July 1, 2009, although he did not feel he had fully recovered.

*ALC SUBSEQUENTLY FIRES NORTON*

26. On July 20, 2009, and without bothering to apprise Norton, ALC posted the job held by Norton on an internet job search site called "Career Builder."

27. On July 20, 2009, and without bothering to apprise Norton, ALC posted the job held by Norton on an internet job search site called "Career Builder."  A true and correct copy of same is attached hereto as **Exhibit B**.

28. On July 23, 2009, ALC placed Norton on a 30-day probation.

29. On July 23, 2009, ALC, by and through Ms. Cindy Giles, Norton's immediate supervisor and ALC's Regional Director of Sales and Marketing, placed Norton on a 30-day probation.

30.    On July 23, 2009, ALC, by and through Ms. Cindy Giles, Norton's immediate supervisor and ALC's Regional Director of Sales and Marketing, placed Norton on a 30-day probation, at which time she verbally advised Norton that his job is in jeopardy.

31.    ALC fired Norton.

32.    ALC fired Norton effective August 5, 2009.

33.    ALC told Norton of its decision to fire him on August 5, 2009. ALC did not give notice.

34.    ALC advised Norton of its decision to fire him on August 5, 2009 by and through Ms. Cindy Giles, Norton's immediate supervisor and ALC's Regional Director of Sales and Marketing.

35.    On August 5, 2009, Norton's immediate supervisor, Ms. Cindy Giles, ALC's Regional Director of Sales and Marketing, told Norton that ALC had decided to fire Norton because Norton was, as Giles put it, "unable to do whatever was necessary to move census forward."

36.    On August 5, 2009, Norton's immediate supervisor, Ms. Cindy Giles, ALC's Regional Director of Sales and Marketing, told Norton that ALC had decided to fire Norton because Norton was, as Giles put it, "unable to do whatever was necessary to move census forward." Giles did not identify any other reason for the discharge decision.

37.    **Exhibit C** is a true and correct copy of documents produced by or on behalf of ALC.

*NORTON TIMELY FILES A CHARGE OF DISCRIMINATION,*
*EEOC ISSUES A "CAUSE" DETERMINATION, AND CONCILIATION FAILS*

38.    Norton filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission.

39.    Norton filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission in October 2009.

40. ALC received a charge of discrimination from the U.S. Equal Employment Opportunity Commission, which the Commission represented to ALC was filed by Norton.

41. **Exhibit D** is a true and correct copy of the charge of discrimination which ALC received from the U.S. Equal Employment Opportunity Commission.

42. On January 6, 2010, ALC transmitted a written response to the charge of discrimination it had received from the U.S. Equal Employment Commission concerning Norton.

43. **Exhibit E** is a true and correct copy of ALC's written response to the charge of discrimination it had received from the U.S. Equal Employment Commission concerning Norton.

44. The U.S. Equal Employment Opportunity Commission found there is reasonable cause to believe that ALC discriminated against Norton as alleged in the charge of discrimination attached hereto as **Exhibit D**.

45. ALC received a letter from the U.S. Equal Employment Opportunity Commission titled "Determination," a true and correct copy of which is attached hereto as **Exhibit F**.

46. ALC and Norton participated in the conciliation process – specifically, ALC and Norton went to private mediation on September 9, 2010.

47. Conciliation failed. See **Exhibit G**, which is also on file with the Court. *See* (Doc. 11).

48. The U.S. Equal Employment Opportunity Commission mailed a letter, dated November 1, 2010, titled "Notice of Right to Sue (Conciliation Failure)," addressed to ALC's Senior Corporate Counsel.

49. The U.S. Equal Employment Opportunity Commission mailed a letter, dated November 1, 2010, titled "Notice of Right to Sue (Conciliation Failure)," addressed to ALC's

Senior Corporate Counsel. ALC received this letter.

50. **Exhibit H** is a true and correct copy of a letter received by ALC from the U.S. Equal Employment Opportunity Commission, dated November 1, 2010, titled "Notice of Right to Sue (Conciliation Failure).

### Count One –FMLA Discrimination/Retaliation

51. Norton incorporates by reference the allegations contained in paragraphs 1 through 50 as if those allegations were set forth verbatim.

52. The FMLA provides protection for employees by making it unlawful for an employer to discharge an employee for exercising her rights under the act. See e.g., 29 C.F.R. 825.220(c) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave").

53. ALC violated that proscription as follows. First, ALC meets the definition of "employer" found in the FMLA. *See* 29 U.S.C. §2611(4)(A). Second, Norton meets the definition of "eligible employee," also found in the FMLA. *See id.* at §2611(2). Third, Norton's renal cancer constitutes a "serious health condition" as defined by the FMLA. *See id.* at §2611(11). Fourth, ALC violated the FMLA when it fired Norton thirty-five days after he had returned from his cancer surgery.

54. Norton is entitled to relief in the form of lost wages, salary, employment benefits, or other compensation denied or lost by reason of ALC's violation of the FMLA.

55. ALC's violation of the FMLA was willful. Thus, Norton is entitled to an award of liquidated damages in addition to equitable relief.

56. Norton seeks equitable relief in the form of reinstatement or, alternatively, front pay.

57. Norton is entitled to recover reasonable attorney fees and costs.

58. Norton is entitled to such other relief as may be appropriate, including pre-judgment and post-judgment interest.

### Count Two – ADA Discrimination (Actual Disability)

59. Norton incorporates by reference the allegations contained in paragraphs 1 through 50 as if those allegations were set forth verbatim.

60. ALC discharged Norton because of an actual disability in violation of the ADA.

61. Norton has fully exhausted his administrative remedies, and he has fulfilled all prerequisites to the filing of this claim, as follows:

   A. Norton filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission within 300 days of the termination of his employment.

   B. On November 1, 2010, the U.S. Equal Employment Opportunity Commission issued a notice of Norton's right to file a civil action, and Norton brings this claim within 90 days of receiving such notice.

62. By reason of ALC's violation of the ADA, Norton is entitled to an award of wages and employment benefits in the past – back pay – plus wages and economic benefits in the future – front pay – and other appropriate equitable relief.

63. Norton is further entitled to recover compensatory damages in the past, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses, as well as compensatory damages in the future, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses.

64. Because ALC engaged in such discriminatory practices with malice or with reckless

indifference to Norton's federally-protected rights, Norton is entitled to an award of punitive damages against ALC.

65. Norton seeks recovery of all interest available to him.

66. As the prevailing party, Norton is entitled to an award of attorney fees. He also requests reimbursement for expert fees as part of his costs.

### Count Three – ADA Discrimination ("Regarded As" Disability)

67. Pleading in the alternative, Norton incorporates by reference the allegations contained in paragraphs 1 through 50 as if those allegations were set forth verbatim.

68. ALC discharged Norton because ALC regarded him as disabled in violation of the ADA.

69. Norton has fully exhausted his administrative remedies, and he has fulfilled all prerequisites to the filing of this claim, as follows:

   A. Norton filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission within 300 days of the termination of his employment.

   B. On November 1, 2010, the U.S. Equal Employment Opportunity Commission issued a notice of Norton's right to file a civil action, and Norton brings this claim within 90 days of receiving such notice.

70. By reason of ALC's violation of the ADA, Norton is entitled to an award of wages and employment benefits in the past – back pay – plus wages and economic benefits in the future – front pay – and other appropriate equitable relief.

71. Norton is further entitled to recover compensatory damages in the past, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of

enjoyment of life, and other non pecuniary losses, as well as compensatory damages in the future, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses.

72. Because ALC engaged in such discriminatory practices with malice or with reckless indifference to Norton's federally-protected rights, Norton is entitled to an award of punitive damages against ALC.

73. Norton seeks recovery of all interest available to him.

74. As the prevailing party, Norton is entitled to an award of attorney fees. He also requests reimbursement for expert fees as part of his costs.

### Jury Demand

75. Pursuant to FED. R. CIV. P. 38, Norton reaffirms his demand for a jury, which he made at the commencement of this lawsuit in state court.

### Request For Relief

WHEREFORE, Michael J. Norton asks for the foregoing relief, and for all such other and further relief to which he is justly entitled.

Dated: November 16, 2010

Respectfully submitted,

By: /s/ _____
    **Wade A. Forsman**
    State Bar No. 07264257
    P.O. Box 918
    Sulphur Springs, TX 75483-0918
    Tel.: 903.689.4144
    Fax: 903.689.7001
    forsmanlaw@verizon.net

          **Attorney for Plaintiff Michael J. Norton**

### Certificate of Service

I certify that a copy of the foregoing document has been served upon the following counsel of record pursuant to the Federal Rules of Civil Procedure and the Local Rules on this the 16th day of November 2010:

    Jay M. Wallace
    Gibson, McClure, Wallace & Daniels, L.L.P.
    8080 North Central Expressway
    Suite 1300, L.B. 50
    Dallas, TX 75206

      /s/
    _____
    **Wade A. Forsman**