IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MICHAEL J. NORTON<br>    Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. 4:10-cv-00091<br>Jury |
| ASSISTED LIVING CONCEPTS, INC.<br>    Defendant. | §<br>§ | |

# DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Jay M. Wallace, Attorney-in-charge
Michael L. Baum
E. Adrienne Jackson
Gibson, McClure, Wallace & Daniels, L.L.P.
8080 N. Central Expressway
Suite 1300, L.B. 50
Dallas, Texas 75206-1838
Tel: 214/891-8040
Fax: 214/891-8019
*Counsel for Defendant*

**TABLE OF CONTENTS**

I.  SUMMARY OF ARGUMENT ....................................................................................... 1

II.  STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ................................... 2

III.  SUMMARY OF FACTS ................................................................................................. 2

   A.  Undisputed Background Facts ............................................................................... 2

   B.  Undisputed Facts Concerning Plaintiff's Ability to Perform
       His Job and Information Imparted to ALC upon Return from Leave .................... 3

   C.  Additional Facts Concerning Drop In Census and Plaintiff's
       Inability to Account for Leads ............................................................................... 4

IV.  ARGUMENTS AND AUTHORITIES .............................................................................. 5

   A.  Summary Judgment Standard ................................................................................ 5

   B.  Plaintiff's *Prima Facie* Burden .............................................................................. 6

   C.  No Disability, Actual or Perceived ........................................................................ 9

# **TABLE OF AUTHORITIES**

**Cases**

*Aldrup v. Caldera*,
　　274 F.3d 282 (5th Cir. 2001) ....................................................................................... 6

*Bennett v. Calabrian Chems. Corp.*,
　　324 F. Supp.2d 815 (E. D. Tex. 2004) ........................................................................ 7

*Celotex v. Catrett*,
　　477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ................................................ 5

*Dutcher v. Ingalls Shipbuilding*,
　　53 F.3d 723 (5th Cir. 1995) ......................................................................................... 6

*Ellison v. Spectrum, Inc.*,
　　85 F.3d 187 (5th Cir. 1996) ......................................................................................... 8

*Haralson v. Campuzano*,
　　356 Fed.Appx. 692 (5th Cir. 2009) ............................................................................. 8

*Little v. Liquid Air Corp.*,
　　37 F.3d 1069 (5th Cir. 1994) ....................................................................................... 5

*McInnis v. Alamo Cmty. Coll. Dist.*,
　　207 F.3d 276 (5th Cir. 2000) ....................................................................................... 6

*Miller v. Airborne Exp.*,
　　1999 WL 47242, at *5 (N.D.Tex. Jan. 22, 1999) ........................................................ 7

*Penny v. United Parcel Serv.*,
　　128 F.3d 408 (6th Cir. 1997) ....................................................................................... 7

*Robinson v. Global Marine Drilling Co.*,
　　101 F.3d 35 (5th Cir. 1996) ......................................................................................... 7

*Sherrod v. American Airlines, Inc.*,
　　132 F.3d 1112 (5th Cir. 1998) ................................................................................. 6, 7

*Stone v. International Business Machines Corp.*,
　　2006 WL 355333 at *8 (S.D.Tex. Feb. 16, 2006) ....................................................... 6

*Sutton v. Lader*,
　　185 F.3d 1203 (11th Cir.1999) .................................................................................... 8

*Sutton v. United Air Lines, Inc.*,
    527 U.S. 471, 119 S.Ct. 2139 (1999) ................................................................................ 7

*Talk v. Delta Airlines, Inc.*,
    165 F.3d 1021 (5th Cir. 1999) ..................................................................................... 6, 7

*Toyota Motor Manufacturing, Inc. v. Williams*,
    534 U.S. 184 (2002) ........................................................................................................ 8

*Turco v. Hoechst Celanese Corp.*,
    101 F.3d 1090 (5th Cir. 1996) .......................................................................................... 6

*Waldrip v. General Electric Co.*,
    325 F.3d 652 (5th Cir. 2003) ....................................................................................... 6, 7

### **Statutes**

29 C.F.R. § 1630.2(i) ................................................................................................................. 7

29 C.F.R. §§ 1630.2(j)(1)(i)(ii) .................................................................................................. 7

42 U.S.C. § 12102 ..................................................................................................................... 7

42 U.S.C. § 12102(2) ................................................................................................................ 6

42 U.S.C. §12102 (3)(A) ........................................................................................................... 8

42 U.S.C. § 12102(4) ................................................................................................................ 8

F<small>ED</small>.R.C<small>IV</small>.P. 56(c) ..................................................................................................................... 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MICHAEL J. NORTON<br>    Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. 4:10-cv-00091<br>Jury |
| ASSISTED LIVING CONCEPTS, INC.<br>    Defendant. | §<br>§<br>§ | |

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

COMES NOW, Defendant Assisted Living Concepts, Inc. ("ALC") and files this Motion for Partial Summary Judgment and Brief in Support, and would respectfully show the Court as follows:

## I.
## SUMMARY OF ARGUMENT

Plaintiff, Michael J. Norton ("Plaintiff") worked as a Residence Sales Manager at Hopkins House, for ALC's community in Sulfur Springs, Texas. ALC terminated Plaintiff on or about August 5, 2009, for *inter alia*, failing to drive census at the facility. His failures in this regard included repeated instances of being unable to explain the status of sales leads. Plaintiff has now brought suit against ALC, alleging violations of the Family Medical Leave Act and Americans with Disabilities Act ("ADA"). However, Plaintiff was not disabled as that term is defined under the law, nor has Plaintiff adduced any evidence whatsoever ALC regarded him as disabled. As such, Plaintiff cannot make a *prima facie* case of discrimination under the ADA. Thus, summary judgment is proper as to Plaintiff's ADA claims.

## II.
## STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

The issue before the Court is whether Plaintiff has met his *prima facie* burden to show he was either disabled as that term is defined under the ADA or "regarded as" disabled by ALC.

## III.
## SUMMARY OF FACTS

**A.    Undisputed Background Facts.**

Plaintiff began employment with ALC on approximately May 18, 2008 as a Resident Sales Manager ("RSM") at Hopkins House, an assisted living residence owned and operated by ALC. *See, e.g. **ALC-App 009 - 010***. Plaintiff's direct supervisor was Cindy Giles, Regional Director of Sales and Marketing. *See **ALC-App 015***.

As RSM, Plaintiff was responsible for directing the marketing efforts for Hopkins House. *See **ALC-App 009 - 010***. A critical part of Plaintiff's job as RSM was lead generation and development. ***ALC-App 010***. Plaintiff was responsible for not only making initial contact with leads, but following up with the leads as well. *Id*. By Plaintiff's own admission, a RSM cannot be complacent with the census at any given time; rather, because beds continually come open at an assisted living facility, it is critically important for an RSM to be constantly working and developing leads. ***ALC-App 011***. Further, Plaintiff was required to rank his leads from "hot" to "cold". ***ALC-App 086***. In this regard, Plaintiff was required to know the status (what he had done with the leads and what was the plan for the leads was going forward) of his "hot" and "warm" leads at any given time; if he was asked the status of those leads, he needed to be able to provide an answer. ***ALC-App 016***.

At the time Plaintiff started at Hopkins House, the facility had thirty beds. ***ALC-App 010***. Soon after he began employment with ALC, Norton learned ALC planned to open a new

addition. *ALC-App 010*. ALC broke ground on this new addition, which was to include an additional twenty-two-bed unit, soon after he started. *Id*. Of note, a key part of Plaintiff's responsibilities included filling the new addition. *ALC-App 014*. Indeed, one of the principal reasons for Plaintiff's existence as RSM was to work towards the opening of the new addition and, specifically, to have residents ready to move in to the new addition when it opened. *ALC-App 021*.

In addition to Plaintiff, both the Residence Director and Wellness Director Hopkins House assisted in lead development and generation at Hopkins House. *See, e.g. ALC-App 013*. However, both the House Director and the Wellness Director had significant areas of responsibility aside from sales (i.e. responsibility for care of residents); by contrast, Plaintiff's sole bailiwick as RSM was sales. *See ALC-App 016*. As such, as RSM Plaintiff was accountable for occupancy rates at Hopkins House. *See, e.g. ALC-App 013*. Indeed, as RSM Plaintiff bore the greatest share of the responsibility for lead development and generation. *See ALC-App 018*; *See* **ALC-***App 020*.

On May 20, 2009, Norton requested FMLA leave to undergo an operation related to suspected renal cancer. *See ALC-App 003*; *See ALC-App 008*. ALC granted this request and Norton was out on leave beginning on approximately May 22, 2009. *See ALC-App 004*. Norton returned to work at Hopkins House on July 1, 2009. *See ALC-App 005*; *ALC-App 024 – 025*.

B.   **Undisputed Facts Concerning Plaintiff's Ability to Perform His Job and Information Imparted to ALC upon Return From Leave.**

As noted above, following his surgery Plaintiff returned to work at ALC on or about July 1, 2009. The following key facts are undisputed concerning his condition upon his return from leave:

- On June 25, 2009, Plaintiff's physician provided Plaintiff a note stating Plaintiff could return to work on July 1, 2009 *with no restrictions listed*. *See* **ALC-App 024 – 025**.

- Likewise, also on June 25, 2009, Plaintiff emailed his supervisor, Cindy Giles, and others at ALC and informed them: (1) his surgical area was clean of cancer; (2) he had no cancer in the adjoining lymph system; (3) he had no cancer in the surrounding fat and organ tissue; (4) other than a check up every ninety days for the next year, he required no further treatment, no chemotherapy, and no cancer drugs. *See **ALC-App 005*** attached hereto (Emphasis added).

- When he returned to work at Hopkins House on July 1, 2009, Plaintiff felt both physically and cognitively he could perform his job duties. ***ALC-App 022 - 023***.

- Moreover, because Plaintiff believed upon his return he could perform his job both physically and cognitively, he never gave ALC any reason to think otherwise in terms of his ability to perform his job. *Id.*

C.  **Additional Facts Concerning Drop In Census and Plaintiff's Inability to Account for Leads.**

According to Plaintiff, the new addition of Hopkins House opened in June of 2009. *See ALC-App 014*. As noted above, one of the principal reasons for Plaintiff's existence as RSM at Hopkins House was to fill the new addition. Plaintiff had over a year to get residents signed up and committed to moving in to the new addition prior to the time of its opening. *ALC-App 021*. Nevertheless, Plaintiff had filled only two of the twenty-two beds at the time the addition opened. *ALC-App 021*.

In addition, while Norton was out on leave, the census at Hopkins House continued to lag behind ALC's budgeted requirements, dipping from approximately 85 percent of the budgeted number to a mere 74 percent. *See ALC-App 006*. Critically, Plaintiff agrees that the drop in census while he was out on leave was attributable to either one of two factors: 1) his co-workers (who Plaintiff is all too willing to throw under the bus) failed to close the leads he had generated; or 2) Plaintiff had not adequately generated and developed his leads to begin with, in which case Plaintiff is accountable. *ALC-App 020*.

Based in part on the drop in census at Hopkins House, ALC began holding Wednesday night conference calls with regional staff members. *See **ALC-App 012**, **ALC-App 015**, and **ALC-App 026 – 027***. These calls were conducted by, among others Michael Jacksic (Divisional Vice President), Cindy Giles (Regional Director of Sales and Marketing), Becky Edwards (Operations Specialist), and sometimes Linda Garrido (Regional Director of Quality and Care Management). *See, e.g.* ***ALC-App 017***. The purpose of the Wednesday night conference calls was to discuss lead generation and development for the region. *See **ALC-App 017***.

As noted above, as RSM Plaintiff was required to know the status of his "hot" and "warm" leads at any given time. ***ALC-App 016***. Plaintiff admits on at least one occasion during these conference calls with upper management he was unable to provide adequate explanation concerning the status of his leads. *See **ALC-App 018***. On July 23, 2009, Cindy Giles put Plaintiff on a Performance Improvement Plan. *See **ALC-App 026 – 027***. ALC terminated Plaintiff on August 5, 2009 for, *inter alia¸* failing to drive census. *See **ALC-App 019***.

## IV.
## ARGUMENTS AND AUTHORITIES

**A.     Summary Judgment Standard.**

Summary judgment is proper under Rule 56 of the Federal Rules of Civil Procedure if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Under Rule 56, summary judgment must be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

B.      **Plaintiff's *Prima Facie* Burden.**

The standard for proving ADA discrimination is well-settled. To establish a *prima facie* case of discrimination under the ADA, a plaintiff must establish the following: (1) he suffers from a disability; (2) he is qualified for the job despite the disability; (3) he was subjected to an adverse employment action due to the disability; and (4) he was treated less favorably than non-disabled employees or replaced by someone not in the protected class. *See Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000). The employer is entitled to summary judgment when the claimant fails to make a *prima facie* showing that he or she falls within the class at issue. *See, e.g. Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092-94 (5th Cir. 1996); *Stone v. International Business Machines Corp.*, 2006 WL 355333 at *8 (S.D.Tex. Feb. 16, 2006).

A Plaintiff seeking relief under the ADA must also establish that he has a "disability" protected by the statute. *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999); *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1121 (5th Cir. 1998). The ADA defines "disability" as (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

A physical impairment alone is not necessarily a disability. It must also substantially limit a major life activity. *Sherrod* at 1120-1124; *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995). When the evidence fails to show that impairment substantially limits any major life activity, the Plaintiff has failed to create a genuine issue of fact on the "disability" element of his case. *Waldrip v. General Electric Co.*, 325 F.3d 652, 655 (5th Cir. 2003).

Typical "major life activities" that must be impaired, include such activities as walking, caring for oneself, performing manual tasks, seeing, hearing, speaking, breathing, learning, and working. *see* 29 C.F.R. § 1630.2(i) (1996); *Talk*, 165 F.3d at 1024-25; *Bennett v. Calabrian Chems. Corp.*, 324 F. Supp.2d 815, 827 (E. D. Tex. 2004). The term "substantially limits" means "[u]nable to perform" or "[s]ignificantly restricted." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 480, 119 S.Ct. 2139 (1999)(*quoting* 29 C.F.R. §§ 1630.2(j)(1)(i)(ii) (1998)).

To survive summary judgment, a plaintiff must present specific evidence that his particular impairment substantially limits his particular major life activity, or alternatively that he has a record of a substantial limitation or was regarded as substantially limited. *See Waldrip v. General Electric Co.*, 325 F.3d 652, 565 (5th Cir. 2003). Modest impairments which allowed him to, at all times, work on a "full duty" basis, are not "substantial limitations." *See, e.g. Sherrod*, 132 F.3d at 1120 (employee's back injury did not substantially limit a major life activity because she was restricted only from heavy lifting, not the routine duties of daily living); *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997) (cases make clear that moderate difficulty or pain experienced while walking does not rise to level of disability); *Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 37 (5th Cir. 1996) (individual with asbestosis was not substantially limited in the major life activity of breathing merely because he suffered weakness and shortness of breath while climbing stairs ); *Miller v. Airborne Exp.*, 1999 WL 47242, at *5 (N.D.Tex. Jan. 22, 1999).

As the Court knows, in October 2008, President Bush signed into law the "ADA Amendments Act of 2008 (the "ADAA")." That law specifically reversed, in part, certain of leading Supreme Court cases involving the definition of those individuals who are "disabled" under the Act. 42 U.S.C. § 12102 (2008). The ADA as amended incorporates the definition of a

"disability" from the original version of the Act meaning a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment or being regarded as having such an impairment. The amended version of the Act goes onto say that:

> The term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendment Act of 2008; (C) an impairment that substantially limits one or more major life activity need not limit other major life activities in order to be considered a disability; (D) an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when acted.

42 U.S.C. § 12102(4). As a result of the expansion of the Act's coverage under the Amended version of the ADA, an impairment need not necessarily limit "those activities that are of central importance to daily life," but must still be longstanding in duration (as opposed to temporary) and limit one or more major life activities. *See Toyota Motor Manufacturing, Inc. v. Williams*, 534 U.S. 184, 198 (2002). For purposes of paragraph (1)(C): An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C. §12102 (3)(A).

Notwithstanding the 2008 amendments, it is insufficient for a Plaintiff to establish simply that he has a medical condition of which the employer is aware; the plain language of the statute require the employer regard the employee as having an *impairment*. *Haralson v. Campuzano*, 356 Fed.Appx. 692, 697 (5th Cir. 2009); *See also Ellison v. Spectrum, Inc.*, 85 F.3d 187, 192-93 (5th Cir. 1996) (employer's mere awareness of employee's cancer does not mean the employer regards her as disabled); s*ee also Sutton v. Lader,* 185 F.3d 1203, 1209 (11th Cir.1999) (the mere

fact that an employer knows a person has medical problems does not mean that the employee is regarded as having an impairment).

C.     **No Disability, Actual or Perceived.**

While, to be sure, the 2008 amendments noted above have lessened the evidentiary burdens for ADA Plaintiffs, they did not abrogate the requirement that a Plaintiff establish: 1) he or she is disabled; or 2) for purposes of a "regarded as" claim, establish some evidence that the employer, at a minimum, regarded the employee as having an impairment.  As is set out above, following his surgery, Plaintiff was fully able to perform the essential functions of his job.  *See ALC-App 022 – 023*; *See ALC-App 024 – 025*.  Moreover, neither Plaintiff nor his physician ever imparted any information to ALC which could have possibly caused them to regard Plaintiff as having an actual or perceived impairment, and Plaintiff has adduced no evidence whatsoever ALC ever regarded him as having an impairment, substantially limiting or otherwise.  To the contrary, all communications from the Plaintiff and his physician were that following surgery Plaintiff had no impairments at all.  The critical testimony from Plaintiff's deposition on this issue was as follows:

> Q.     Well, did you have some sense that you couldn't perform to the expectations of the job given what you had gone through?
>
> A.     No, Counselor, I didn't.
>
> Q.     Okay.
>
> A.     Physically I felt I would do fine.
>
> Q.     Okay. Cognitively did you think you would do fine?
>
> A.     I did.
>
> Q.     And if you felt you would do physically and cognitively and didn't indicate to ALC otherwise, reasonable for them to think the same thing?

> A. Sure . . . I agree. I gave them no reason to think otherwise.
>
> Q. Okay. . . . [P]rior and up to the time of your termination did you ever give ALC any reason to think otherwise in terms of your ability to perform the job physically and cognitively?
>
> A. No. I did the job every day. *See **ALC-App 022 – 023***.

Based on Plaintiff's own deposition testimony as well as the evidence cited above, it borders on the absurd for Plaintiff to claim either he was disabled and/or that ALC regarded him as disabled. Under the credible summary judgment evidence, Plaintiff cannot satisfy his *prima facie* burden on his ADA claim. Summary judgment is therefore proper.

WHEREFORE, Defendant Assisted Living Concepts, Inc. requests that the Court issue an Order granting this Motion for Partial Summary Judgment and Brief in Support, and for such other relief as Defendant is justly entitled.

Respectfully submitted,

**GIBSON, McCLURE,
   WALLACE & DANIELS, L.L.P.**

By:   /s/ Michael L. Baum
Jay M. Wallace
State Bar No. 20769200
Michael L. Baum
State Bar No. 24006815
E. Adrienne Jackson
State Bar No. 24058795
8080 North Central Expressway
Suite 1300, L.B. 50
Dallas, TX 75206
Tel: 214/891-8040
Fax: 214/891-8019
*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on **January 20, 2011**, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Texas using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Wade A. Forsman
P.O. Box 918
Sulphur Springs, TX 75483-0918

                                                          /s/ Michael L. Baum
                                                          Michael L. Baum