IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MICHAEL J. NORTON | § | |
|     Plaintiff-Counter-defendant, | § | |
| | § | |
| v. | § | Civil Action No. 4:10cv91 |
| | § | Jury |
| ASSISTED LIVING CONCEPTS, INC., | § | |
|     Defendant-Counter-plaintiff. | § | |

**MICHAEL J. NORTON'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

**Wade A. Forsman**
***Attorney-in-Charge***
**State Bar No. 07264257**
**P.O. Box 918**
**Sulphur Springs, Texas 75483-0918**
**903.689.4144 East Texas**
**972.499.4004 Dallas/Fort Worth**
**903.689.7001 Facsimile**
**forsmanlaw@verizon.net**

**Attorney for Michael J. Norton, Plaintiff-Counter-defendant**

# Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.     **Norton's Response To ALC's Statement of Issues: Norton Had An Actual Disability. Norton Had Renal Cancer During The Time Frame That Gave Rise To This Action. Norton's Cancer Substantially Limited The Major Life Activity Of Normal Cell Growth**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    Norton Objects and Moves to Strike Certain Evidence Offered by ALC  . . . . . . . . . . . . 4

    A.    App. 006: "2009 Occupancy Trend Report, Budgeted and Actual for Hopkins House" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1.    App. 006 is irrelevant to the sole issue currently before this Court, which is whether Norton had an actual disability under the ADA for purposes of establishing a *prima facie* case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        2.    It is undisputed that ALC failed to produce App. 006 during discovery . . 5

    B.    App. 007-023: "Relevant pages from the deposition transcript of Michael J. Norton" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.    ALC has failed to authenticate App. 007-023 . . . . . . . . . . . . . . . . . . . . 5

        2.    Subject to the foregoing objection, the "relevant pages"  – they are highlighted in yellow – are irrelevant to the sole issue currently before this Court, which is whether Norton had an actual disability under the ADA for purposes of establishing a *prima facie* case  . . . . . . . . . . . . . . . . . . . . . . . 6

    C.    App. 026-027: "July 23, 2009 ALC Performance Improvement Plan, attached as Exhibit No. 2 to the deposition of Michael J. Norton," and discussed on page 75 of Norton's deposition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.    App. 026-027 is irrelevant to the sole issue currently before this Court, which is whether Norton had an actual disability under the ADA for purposes of establishing a *prima facie* case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.    App. 026-027 should be stricken because ALC failed to produce it in discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                 **Page i**

D.      Norton's Request For A Ruling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.    Norton Objects to Any New Evidence or Arguments by ALC . . . . . . . . . . . . . . . . . . . . 8

IV.    ALC's Deficient "Summary of Facts" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.      ALC's "Summary of Facts" Includes Matters Which, As Previously Discussed, Are Not Material to the Sole Issue Currently Before This Court . . . . . . . . . . . . . . . . . 8

      B.      ALC's "Summary of Facts" Includes Matters Which are Disputed And Inappropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      C.      ALC Makes Credibility Assessments, and it Invites This Court to do Likewise, Which is Improper at this Summary Judgment Stage . . . . . . . . . . . . . . . . . . . . . . 9

      D.      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.    Norton's Statement of Facts Material to the Sole Issue Currently Before This Court, Which is Whether Norton Was "Disabled" as Defined by the ADA For Purposes of Establishing a *Prima Facie* Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VI.    Norton Conclusively Establishes That, As A Matter Of Law, He Is Actually Disabled Under the ADA As Amended . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      A.      ADA Amendments Act of 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            1.      The ADAAA broadens the interpretation of the word "disability" . . . . . 14

            2.      The ADAAA broadens the interpretation of the phrase "substantially limits" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            3.      The ADAAA includes episodic conditions and those in remission . . . . . 17

            4.      The ADAAA expands the definition of "major life activities" . . . . . . . 18

      B.      Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

            1.      EEOC's cause determination warrants denial of the Motion . . . . . . . . . 20

            2.      Norton requests a finding that he is actually disabled under the ADA . . 21

VII.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                    **Page ii**

# Table of Authorities

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7, 8

*Brodsky v. New England School of Law*,
617 F. Supp. 2d 1 (D. Mass 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cook v. Equilon Enters., L.L.C.*,
2010 U.S. Dist. LEXIS 113871 (S.D. Tex. Oct.  26, 2010) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Davison v. City of Minneapolis*,
490 F.3d 648 (8th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ellison v. Software Spectrum*,
85 F.3d 187 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 19

*EEOC v. AutoZone, Inc.*,
2010 U.S. App. LEXIS 26410 (7th Cir. Dec. 30, 2010) . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*EEOC v. WC&M Enters.*,
496 F.3d 393 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fournier v. Payco Foods Corp.*,
611 F. Supp. 2d 120 (D.P.R 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Franchi v. New Hampton School*,
656 F. Supp. 2d 252 (D.N.H. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gil v. Vortex, LLC*,
697 F. Supp. 2d 234 (D. Mass 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hirsch v. National Mall & Serv., Inc.*,
989 F. Supp. 977 (N.D. Ill. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hoffman v. Carefirst of Ft. Wayne, Inc.*,
___ F. Supp. 2d ___, 2010 U.S. Dist. LEXIS 90879 (N.D. Ind. August 31, 2010)  3, 15, 18, 19

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                                          **Page iii**

*Kingston v. Ford Meter Box Co., Inc.*,
  2009 U.S. Dist. LEXIS 31710 (N.D. Ind. April 10, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Laxton v. Gap, Inc.*,
  333 F.3d 572 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Maxfield v. Cintas Corp.*,
  487 F.3d 1132 (8th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mehmen v. Collin County*,
  558 F. Supp. 2d 711 (E.D. Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Nguyen v. Gambro BCT, Inc.*,
  2007 U.S. App. LEXIS 14956 (10th Cir. June 20, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pridgen v. Department of Pub. Works/Bureau of Highways*,
  2009 U.S. Dist. LEXIS 111424 (D. Md. Dec. 1, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Rohr v. Salt River Project Agric. Improvement and Power Dist.*,
  555 F.3d 850 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Taheri v. Evergreen Aviation Ground Logistics Enters.*,
  2007 U.S. App. LEXIS 21309 (9th Cir. Aug. 31, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Toyota Motor Mfg., Ky., Inc. v. Williams*,
  534 U.S. 184 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 18

*Verhoff v. Time Warner Cable, Inc.*,
  299 Fed. Appx. 488 (6th Cir. Oct. 24, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Statutes**

42 U.S.C. §§12101 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §12102(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 6, 7, 9, 19

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                                      **Page iv**

42 U.S.C. §12102(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18, 20

42 U.S.C. §12102(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17, 20

42 U.S.C. §12102(4)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

42 U.S.C. §12102(4)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18

## Regulations

29 C.F.R. §1630.2(i)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18

29 C.F.R. §1630.2(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

29 C.F.R. §1630.2(j)(2)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

29 C.F.R. §1630.2(j)(2)(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

29 C.F.R. §1630.2(j)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18

29 C.F.R. §1630.2(j)(5)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15, 19

29 C.F.R. §1630.2(j)(6)(i)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## Court Rules

FED. R. CIV. P. 37(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

FED. R. CIV. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

FED. R. CIV. P. 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 21

FED. R. EVID. 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7

FED. R. EVID. 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7

FED. R. EVID. 901(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Local Rule CV-56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Local Rule CV-56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                 **Page v**

**Law Reviews**

Brian East, *Struggling To Fulfill Its Promise: The ADA At 15,* 68 TEX. B. J. 614 (July 2005) . . 14

Alex B. Long, *Article: Introducing The New And Improved Americans With Disabilities Act: Assessing The ADA Amendments Act Of 2008,* 103 NW. U.L. REV. COLLOQUY 217 (Nov. 2008) 14

**Treatises**

*Litigating Employment Discrimination Cases,* James Publishing, Inc. (2009) . . . . . . . . . . . . . 15

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                    **Page vi**

## Michael J. Norton's Response

Michael J. Norton opposes, in part, the relief requested by Assisted Living Concepts, Inc.

("ALC") in *Defendant's Motion For Partial Summary Judgment And Brief In Support* (Doc. 37)

("Motion").[1] In the Motion, ALC moves for summary judgment on Norton's claim of discrimination

based on actual disability, found in Count Two of *Norton's First Amended Complaint* (Doc. 18)

("Complaint") at ¶¶59-66. Norton opposes this request for relief. Also in the Motion, ALC moves

for summary judgment on Norton's claim of discrimination based on being "regarded as" disabled,

found in Count Three of the Complaint at ¶¶67-74. Norton withdraws Count Three.

I.    **Norton's Response To ALC's Statement of Issues: Norton Had An Actual Disability. Norton Had Renal Cancer During The Time Frame That Gave Rise To This Action. Cancer Substantially Limited The Major Life Activity Of Normal Cell Growth.**

The sole issue raised by ALC in the Motion, which remains ripe for judicial determination

in light of Norton's withdrawal of Count Three, is whether Norton had an actual "disability" for

purposes of establishing a *prima facie* case under the Americans with Disabilities Act, as amended,

42 U.S.C. §§12101 *et seq.* ("ADA").[2]  The evidence and authorities cited herein mandate an answer

in the affirmative.

The ADA defines "disability" in pertinent part as follows – "[t]he term 'disability' means,

with respect to an individual – (A) a physical or mental impairment that substantially limits one or

---

[1]  In the Motion, ALC identifies itself only as the defendant. However, ALC previously brought a counterclaim. *See Def.'s Orig. Ans. To Pl.'s First Am. Compl.* at ¶¶85-89. Thus, ALC is also a counter-plaintiff.

[2]  ALC's own statements make this plain. *See* Mot. at p. 1 ("Plaintiff cannot make a *prima facie* case of discrimination under the ADA"), at p. 2 ("The issue before the Court is whether Plaintiff has met his *prima facie* burden to show he was . . . disabled as that term in defined under the ADA"), and at p. 10 ("Under the credible summary judgment evidence, Plaintiff cannot satisfy his *prima facie* burden on his ADA claim").

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                 **Page 1**

more major life activities of such individual[. . . . ]" *See* 42 U.S.C. §12102(1)(A). As shown below, Norton satisfies this definition of "disability." [3]

First, Norton's medical records show that he suffered from cancer in his left kidney ("papillary renal cell carcinoma"). The Motion contains no evidence *contra*. Cancer is an "impairment" as that word is used in the definition of "disability," found in 42 U.S.C. §12102(1)(A). Even one of the cases cited by ALC in the Motion makes this plain. *See Ellison v. Software Spectrum,* 85 F.3d 187, 190 (5th Cir. 1996) ("It is undisputed that [plaintiff's] cancer was an 'impairment'"), cited in Mot. at p. 8. *See also*, Regulations To Implement the Equal Employment Provisions of the Americans with Disabilities Act, as Amended, proposed by U.S. Equal Employment Opportunity Commission ("EEOC") (to be codified at 29 C.F.R. pt. 1630) (hereinafter "Regulations"), attached hereto as **Exhibit ("Ex.") A**, at 29 C.F.R. §1630.2(j)(5)(i), 74 Fed. Reg. at 48441, which states:

> Examples of Impairments that Will Consistently Meet the Definition of Disability –
> . . . include, but are not limited to – (B) Cancer . . . . [4]

Also, and as a matter of law, Norton's cancer "substantially limits" one of the "major life activities" that Congress expressly identified in the ADA – "normal cell growth." *See* 42 U.S.C. §12102(2)(B);

---

[3]  "The plain language of the statute must be the court's North Star. [Citation omitted]. In addition, each section of a statute should be construed in harmony with the other sections of the statute so as to produce a cohesive expression of policy. [Citation omitted]. In the event of statutory ambiguity, the court must construe the statute so as to effectuate the intent of Congress in enacting the statute." *Mehmen v. Collin County,* 558 F. Supp. 2d 711, 715 (E.D. Tex. 2007) (Schell, J.).

[4]  The EEOC proposed the Regulations for governing enforcement of the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"). They were published in 74 Fed. Reg. 48431 et seq. (Sept. 23, 2009), http://edocket.access.gpo.gov/2009/pdf/E9-22840.pdf.  The  comment period ended 60 days later, in November 2009. At the end of December 2010, the EEOC's five commissioners voted privately and unanimously to approve the Regulations. Modifications to the Regulations, if any, have not been made public, and the Regulations are not yet final. That is because the Office of Management and Budget ("OMB") has not yet approved the Regulations.

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                                              **Page 2**

*see also* Regulations **(Ex. A)** at 29 C.F.R. §1630.2(i)(2), 74 Fed. Reg. at 48440 ("cancer affects normal cell growth").

Norton's cancer was not yet in remission at the time of his discharge. The evidence shows that among other things, Norton was scheduled for a follow-up visit with his doctor about his cancer in September 2009, *i.e.,* after his discharge from ALC, and the Motion offers no evidence *contra.* However, the result – *i.e.,* that Norton suffered from an actual disability as defined by the ADA – would not change even if Norton's cancer were found to be in remission at the time of the events giving rise to this suit. The express language of the ADA makes this plain. *See* 42 U.S.C. §12102(4)(D) ("an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active"); *see also* Regulations **(Ex. A)** at 29 C.F.R. §1630.2(j)(4), 74 Fed. Reg. at 48441 (citing "cancer" as an example). *See e.g., Hoffman v. Carefirst of Ft. Wayne, Inc.,* ___ F. Supp. 2d ___, 2010 U.S. Dist. LEXIS 90879, **21-22  (N.D. Ind. August 31, 2010) (applying § 12102(4)(D), citing the Regulations, and denying employer's motion for summary judgment on ADA claim involving renal cancer in remission) (ATTACHED)**(Ex. B)**.

For these reasons, ALC fails to meet its summary judgment burden, and the Motion must be denied. Indeed, the evidence conclusively establishes that Norton had an actual disability as defined by the ADA. Accordingly, Norton asks that the Court, after giving notice to ALC, as well as a reasonable time for ALC to respond, enter an order finding that Norton suffered from renal cancer, and that his cancer represents an actual disability under the ADA. The Court is authorized to enter such an order pursuant to FED. R. CIV. P. 56(f).

**Michael J. Norton's Response to
Defendant's Motion For Partial Summary Judgment
and Brief in Support**                                                                     **Page 3**

## II.     Norton Objects and Moves to Strike Certain Evidence Offered by ALC

For the reasons that follow, Norton objects and moves to strike the following evidence found in the Appendix to the Motion: "Occupancy Trend Report, Budgeted and actual for Hopkins House" (App. 006); "Relevant pages from the deposition transcript of Michael J. Norton" (App. 007-023); and, "July 23, 2009, ALC Performance Improvement Plan, attached as Exhibit No. 2 to the deposition of Michael J. Norton" (App. 026-027).

### A.     App. 006: "2009 Occupancy Trend Report, Budgeted and Actual for Hopkins House"

Norton objects and moves to strike this document for the following two reasons.

#### 1.     App. 006 is irrelevant to the sole issue currently before this Court, which is whether Norton had an actual disability under the ADA for purposes of establishing a *prima facie* case

Only "relevant evidence" is admissible. *See* FED. R. EVID. 402. The phrase "[r]elevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* FED. R. EVID. 401. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("the substantive law will identify which facts are material . . . [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs").

The place where Norton worked, referenced in App. 006, could have been empty, or it could have been overflowing. Either way, it makes no difference for purposes of determining the sole issue currently before this Court – which, again, is whether  Norton was "disabled" within the meaning of the ADA for purposes of establishing a *prima facie* case.  *See* 42 U.S.C. §12102(1)(A)(defining "disability").

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                                        **Page 4**

### 2.      It is undisputed that ALC failed to produce App. 006 during discovery

This Court's discovery cutoff date was December 17, 2010. *See* Scheduling Order (Doc. 10) at p. 2, ¶6. However, ALC served the document marked App. 006 at 11:17 a.m. on January 20, 2011. Service was via facsimile. According to the Notice of Electronic Filing ("NEF"), ALC filed the Motion, which among other things included App. 006, at 3:36 p.m. later that same day.

> NOTE: Norton has previously discussed in detail the untimely production of App. 006 in paragraphs 2-9 of the following document – *Norton's Unopposed Motion For Leave To File Out Of Time Supplement To Norton's Motion For Summary Judgment On ALC's Counterclaim For Conversion (Doc. 34),* filed on Jan. 23, 2011 (Doc. 38).

The foregoing conduct is fatal to the admission of App. 006. Fed. R. Civ. P. 37(c)(1) mandates that ALC "is not allowed to use" App. 006 unless it can prove that its failure to timely produce the document "was substantially justified." The Advisory Committee Notes accompanying the Rule refer to this sanction as both "automatic" and "self-executing."  Fed. R. Civ. P. 37, Advisory Committee Notes, 1993 Amendments.

### B.      App. 007-023: "Relevant pages from the deposition transcript of Michael J. Norton"

Norton objects and moves to strike this document – or, alternatively, portions thereof – for the following reasons.

### 1.      ALC has failed to authenticate App. 007-023

Like all evidence, documents must be authenticated. *See* Fed. R. Evid. 901(a). The Rule carves out no exception for deposition transcripts; likewise, it carves out no exception for transcripts offered as part of a motion for summary judgment. In this case, ALC has taken no steps to authenticate App. 007-023. Therefore, it is inadmissible.

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                        **Page 5**

2.     Subject to the foregoing objection, the "relevant pages" – they are highlighted in yellow – are irrelevant to the sole issue currently before this Court, which is whether Norton had an actual disability under the ADA for purposes of establishing a *prima facie* case

    a.     page 41, lines 23-25; page 42, line 1; page 43, lines 14-25;page 44, lines 1-12; page 45, lines 22-25; page 46, lines 1-5 and 19-25; page 47, lines 13-16; page 48, lines 6-9; page 49, lines 3-8; page 54, line 25; page 55, lines 1-5; page 57, lines 23-25; page 58, lines 1-11 and 14-17; page 61, lines 6-12; page 63, lines 16-21; page 74, lines 8-10; page 85, lines 11-25; page 86, lines 1-5 and 8-25; page 87, lines 5-8; page 89, lines 16-20; page 90, lines 17-22; page 93, lines 20-25; page 94, line 4 and 6-10; page 95, lines 12-20; page 101, lines 8-9; page 105, lines 7-25, page 106, lines 1-15 and 24-25; page 107, lines 1-2; page 114, lines 16-25; page 115, lines 1-8; page 116, lines 5-14; page 120, lines 11-25; and, page 121, lines 2-3.

The foregoing testimony contains matters having nothing to do with Norton's renal cancer. Rather, the testimony addresses various other, unrelated issues – *e.g.,* Norton's application for a job at ALC, his understanding of the duties of that job, ALC's new addition to the facility where Norton worked, the number of beds there to fill and Norton's role in filling them, how well that ALC facility did or did not perform, periodic conference calls with other ALC employees to discuss sales, Norton's immediate supervisor, *etc.*

The foregoing deposition passages are not relevant to the sole issue currently before this Court – which, again, is whether Norton was "disabled" within the meaning of the ADA for purposes of establishing a *prima facie* case.  *See* 42 U.S.C. §12102(1)(A)(defining "disability"). *See* FED. R. EVID. 401, 402; *see also, Anderson*, 477 U.S. at 248 ("the substantive law will identify which facts are material . . . [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs").

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                 **Page 6**

### C.     App. 026-027: "July 23, 2009 ALC Performance Improvement Plan, attached as Exhibit No. 2 to the deposition of Michael J. Norton," and discussed on page 75 of Norton's deposition

Norton objects and moves to strike this document for the following two reasons.

#### 1.     App. 026-027 is irrelevant to the sole issue currently before this Court, which is whether Norton had an actual disability under the ADA for purposes of establishing a *prima facie* case

Only "relevant evidence" is admissible. *See* FED. R. EVID. 402. The phrase "[r]elevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* FED. R. EVID. 401. *See also Anderson*, 477 U.S. at 248 ("the substantive law will identify which facts are material . . . [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs").

The alleged performance infractions outlined in App. 026-027 make no difference for purposes of determining the sole issue currently before this Court – which, again, is whether Norton was "disabled" within the meaning of the ADA for purposes of establishing a *prima facie* case. *See* 42 U.S.C. §12102(1)(A)(defining "disability").

#### 2.     App. 026-027 should be stricken because ALC failed to produce it in discovery

Although ALC created this document, ALC never gave it to Norton, either during discovery or at any other time. Instead, it was Norton who served the document on ALC; this allowed ALC to use the document in Norton's deposition.

This conduct is fatal to the admission of App. 026-027. FED. R. CIV. P. 37(c)(1) mandates that ALC "is not allowed to use" App. 026-027 unless it can prove that its failure to timely produce

Michael J. Norton's Response to
Defendant's Motion For Partial Summary Judgment
and Brief in Support                                                                 Page 7

the document "was substantially justified." The Advisory Committee Notes accompanying the Rule refer to this sanction as both "automatic" and "self-executing."  Fed. R. Civ. P. 37, Advisory Committee Notes, 1993 Amendments.

### D.    Norton's Request For A Ruling

Norton requests that the Court enter a ruling on the foregoing matters, and that the Court not consider the foregoing documents in ruling on the Motion.

## III.    Norton Objects to Any New Evidence or Arguments by ALC

Norton objects to any attempt by ALC to offer new evidence, to cure any evidentiary deficiencies in its Motion, or to argue new theories in any reply. Permitting any of the foregoing would deprive Norton of a meaningful opportunity to respond.

## IV.    ALC's Deficient "Summary of Facts"

The rules on summary judgment have been well-established for years.[5] Unfortunately, ALC's "Summary of Facts," found in the Motion at pp. 2-5, ignores these rules in at least three critical respects.

### A.    ALC's "Summary of Facts" Includes Matters Which, As Previously Discussed, Are Not Material to the Sole Issue Currently Before This Court

The plain language of FED. R. CIV. P. 56(a) requires that, as the movant, ALC must prove there is no genuine issue of any fact that is "material." As the Supreme Court observed in *Anderson*, 477 U.S. at 248, what is "material" depends upon the substantive law – in this case, whether Norton was "disabled" within the meaning of the ADA for purposes of establishing a *prima facie* case.  *See*

---

[5] *See generally e.g.,* the U.S. Supreme Court's so-called "summary judgment trilogy" – *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson,* cited *supra;* and, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                        **Page 8**

42 U.S.C. §12102(1)(A) (defining "disability"). Manifestly, ALC has not done this. The previous discussion in Part II.A.1, Part II.B.2, and Part II.C.1, *supra*, make this plain.

**B.     ALC's "Summary of Facts" Includes Matters Which are Disputed And Inappropriate**

Local Rule CV-56(a) requires ALC to include a "Statement of ***Undisputed*** Material Facts." (Emphasis added). However, in the Motion at pp. 2-5, ALC does not do this. That is because it can't. Instead, ALC gives this Court what it calls a "Summary of Facts" – apparently, disputed and undisputed alike.

The "facts" cited by ALC in the Motion at pp. 2-5 read like a trial brief and sound like a jury argument. Citing one example, in the "Summary of Facts" at p. 4 ALC writes that Norton "is all to willing to throw [his co-workers] under the bus." Whatever else may be said about ALC's statement, this is not a statement of fact, much less a statement of a fact that is undisputed.

In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000), the Supreme Court identified a number of rules to follow in deciding motions for summary judgment. Two of those rules are – ***first***, courts must draw all reasonable inferences in favor of the nonmovant – in this case, Norton; and ***second***, courts should give credence to the evidence favoring the nonmovant. Plainly, ALC's "Summary of Facts" is not in compliance with these rules.

**C.     ALC Makes Credibility Assessments, and it Invites This Court to do Likewise, Which is Improper at this Summary Judgment Stage**

Although admittedly not in the "Summary of Facts," ALC nevertheless makes a startling assertion on page 10 of the Motion. There, ALC states, "Under the ***credible*** summary judgment evidence, Plaintiff cannot satisfy his *prima facie* burden on his ADA claim." (Emphasis added).

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                                        **Page 9**

ALC's implicit invitation for this Court to assess the credibility of summary judgment evidence is contrary to controlling case law. *See Reeves,* 530 U.S. at 150-51 (courts may not make credibility determinations or weigh the evidence). *See also EEOC v. WC&M Enters.*, 496 F.3d 393, 398 (5th Cir. 2007); *Laxton v. Gap, Inc.*, 333 F.3d 572, 577 (5th Cir. 2003).[6]

### D.    Conclusion

Based on the foregoing, Norton is constrained, for purposes of Local Rule CV-56(c), to give notice that it controverts ALC's "Summary of Facts" in its entirety. What follows is the evidence on which Norton relies, together with his own statement of material facts.

## V.    Norton's Statement of Facts Material to the Sole Issue Currently Before This Court, Which is Whether Norton Was "Disabled" as Defined by the ADA For Purposes of Establishing a *Prima Facie* Case

1.    On April 21, 2009, Norton had a urological consultation – specifically, to evaluate a mass in his left kidney. Among other things, an "abdominal ultrasound showed an upper pole left renal mass. . . ." *See* Medical Records From Memorial Clinic ("Medical Records"), attached hereto as **Ex. C,** at p. 4. The doctor recommended that Norton undergo an MRI. Id. at p. 5.

2.    This took place on April 24, 2009. The x-ray indicated a "left renal mass," and it yielded the following impression: "There is a 3.3 cm mass within the upper pole of the left kidney." *See* Medical Records **(Ex. C)** at p. 2.

3.    On May 4, 2009, Norton underwent a CT-guided, fine-needle aspiration biopsy of the

---

[6]  To varying degrees, the following cases criticized district courts below them for wrongfully engaging in credibility assessments, which resulted in those district courts ruling against employment plaintiffs – *Taheri v. Evergreen Aviation Ground Logistics Enters.*, 2007 U.S. App. LEXIS 21309 (9th Cir. Aug. 31, 2007); *Davison v. City of Minneapolis*, 490 F.3d 648 (8th Cir. 2007); *Nguyen v. Gambro BCT, Inc.*, 2007 U.S. App. LEXIS 14956 (10th Cir. June 20, 2007); and, *Maxfield v. Cintas Corp.*, 487 F.3d 1132 (8th Cir. 2007).

**Michael J. Norton's Response to
Defendant's Motion For Partial Summary Judgment
and Brief in Support**                                                                 **Page 10**

mass on his left kidney. *See* Medical Records (**Ex. C**) at pp. 6, 10. "Pathology showed a papillary renal cell cancer." Id. at pp. 6, 9.

4.      On May 11, 2009, while Norton was still recovering from the biopsy, referenced above, pathologists telephoned Norton and had him come in at about 4:00 p.m. on that same day. *See* Medical Records (**Ex. C**) at pp. 6, 9. Norton was seen by Dr. Jeffry Huffman to discuss treatment of the mass. Id. at p. 6. At that time Dr. Huffman recommended surgery – specifically, a "left upper pole partial nephrectomy with regional lymph node dissection." Id. at p. 6. During this meeting Norton learned, among other things, "that [a] total nephrectomy may be required," that "he will be hospitalized for 5-7 days," and that he "will be in the ICU for 1-2 days." Id. at p. 6.

5.      The parties agree that Norton apprised ALC of his need for surgery and the reason therefor. *See Norton's First Am. Compl.* (Doc. 18) at ¶20. *See also Defendant's Orig. Ans. To Pl.'s First. Am. Compl.* (Doc. 24) at ¶20  (admitting the allegations contained in ¶20 of Norton's First. Amended Complaint). *See also* Mot. at App. 003 (form from Norton which cites "left kidney cancer" as the reason for his request for medical leave).

6.      The parties agree that Norton underwent surgery on his left kidney on May 22, 2009. *See Norton's First Am. Compl.* (Doc. 18) at ¶21. *See also Defendant's Orig. Ans. To Pl.'s First. Am. Compl.* (Doc. 24) at ¶21 (admitting the allegations contained in ¶21 of Norton's First. Amended Complaint). Specifically, Norton underwent a "left partial nephrectomy" to remove "papillary renal carcinoma." *See* Medical Records (**Ex. C**) at pp. 7, 13. A section of the removed renal mass revealed, among other things, "a papillary renal cell carcinoma."  Id. at p. 13. Norton estimates that doctors made an incision that was approximately 24 inches long. *See* Declaration of Michael J. Norton

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                              **Page 11**

("Norton Decl.") attached hereto at **Ex. D**, at ¶6.

7.    On June 8, 2009, Norton saw Dr. Huffman and had the staples from his surgery removed. *See* Medical Records **(Ex. C)** at p. 7.

8.    Also on June 8, 2009, Dr. Huffman wrote the following: Norton "will return for follow-up in September 2009 for [a number of procedures]." *See* Medical Records **(Ex. C)** at p. 7.

9.    The parties agree that Norton returned to work on July 1, 2009. *See Norton's First Am. Compl.* (Doc. 18) at ¶24. *See also Defendant's Orig. Ans. To Pl.'s First. Am. Compl.* (Doc. 24) at ¶24 (admitting the allegations contained in ¶24 of Norton's First. Amended Complaint).

10.    When Norton returned to work his wound was still draining, and he tired quickly. Norton Decl. **(Ex. D)** at ¶8. Norton was more than 60 years old at the time. *See* Medical Records **(Ex. C)** at pp. 2, 4, 5, 9, 10, 13, 14.

11.    The parties agree that ALC fired Norton. *See Norton's First Am. Compl.* (Doc. 18) at ¶31. *See also Defendant's Orig. Ans. To Pl.'s First. Am. Compl.* (Doc. 24) at ¶31 (admitting the allegations contained in ¶31 of Norton's First. Amended Complaint).

12.    ALC made its decision to fire Norton some time during the last week in July 2009. *See* Defendant's First Am. Ans. To Pl.'s First Set of Interrogs. **(Ex. E)** at p. 4.

13.    The parties agree that ALC advised Norton of its discharge decision on August 5, 2009. *See Norton's First Am. Compl.* (Doc. 18) at ¶32. *See also Defendant's Orig. Ans. To Pl.'s First. Am. Compl.* (Doc. 24) at ¶32 (admitting the allegations contained in ¶32 of Norton's First. Amended Complaint).

14.    The parties agree that on May 3, 2010 the EEOC issued a "cause" determination. *See*

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                                      **Page 12**

*Norton's First Am. Compl.* (Doc. 18) at ¶¶44-45 and Ex. F. *See also Defendant's Orig. Ans. To Pl.'s First. Am. Compl.* (Doc. 24) at 44-45 (admitting the allegations contained in ¶¶44 and 45 of Norton's First. Amended Complaint). For the Court's convenience, although it is already on file with the Court, a true and correct copy of the EEOC's determination letter is attached hereto as **Exhibit F**.

## VI. Norton Conclusively Establishes That, As A Matter Of Law, He Is Actually Disabled Under the ADA As Amended

In the Motion (p. 10), ALC states that "it borders on the absurd for Plaintiff to claim . . . he was disabled . . . ." By these words, ALC shows that it fails to grasp the significance of the changes made to the Americans with Disabilities Act.

### A. ADA Amendments Act of 2008

On September 25, 2008, President George W. Bush signed into law the ADA Amendments Act of 2008 ("ADAAA"). *See* Americans with Disabilities Act of 2008, Pub. L. No. 110-325, 112 Stat. 3553, 110th Cong., 2d Sess. (Sept. 25, 2008). Congress passed the ADAAA by an overwhelming, bipartisan margin: the Senate passed it unanimously on September 11, 2008, and the House passed it by voice vote on September 17, 2008. A true and correct copy of the ADAAA, consisting of eight pages, is attached as **Exhibit G**.

The ADAAA took effect on January 1, 2009. Because the events made the basis of Norton's ADA claim all occurred after the effective date, the ADAAA applies to this case. Although Congress left the ADA's three-part definition of "disability" intact – *i.e.*, actual disability, record of disability, and perceived or "regarded as" disability – Congress made significant changes as to how courts are to interpret those categories. The portions of the ADAAA that are material to the Motion are discussed below.

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                    **Page 13**

### 1.    The ADAAA broadens the interpretation of the word "disability"

Since the enactment of the original ADA in 1990, its definition of the word "disability" has

effectively been an insurmountable hurdle for plaintiffs. One commentator explained why:

> In order to be protected by the Act, one must first show the existence of a disability.
> To put it mildly, this hasn't been an easy task. As originally drafted, the definition
> was vague, and courts tended to interpret the definition narrowly. People with a wide
> variety of serious physical or mental impairments, ranging from AIDS to cancer to
> bipolar disorder, have been found not to have disabilities under the ADA. In one
> case, an individual with cancer brought suit against his employer and died before the
> resolution of the case, only to be told (posthumously) that the condition that killed
> him really wasn't a disability under the ADA.[7]

Alex B. Long, *Article: Introducing The New And Improved Americans With Disabilities Act:*

*Assessing The ADA Amendments Act Of 2008,* 103 Nw. U.L. Rev. Colloquy 217, 218 (Nov. 2008).

A true and correct copy of this article is attached hereto as **Exhibit H.**

That has changed. The word "disability" is now to be interpreted broadly. The Rules of

Construction require that the definition of disability "shall be construed . . . in favor of broad

coverage of individuals . . . to the maximum extent permitted by the terms of this Act." 42 U.S.C.

§12102(4)(A). The Regulations have the same wording. *See* Regulations **(Ex. A)** at 29 C.F.R.

§1630.1(c)(4), 74 Fed. Reg. at 48439.[8]

---

[7] The referenced case is *Hirsch v. National Mall & Serv., Inc.*, 989 F. Supp. 977 (N.D. Ill. 1997). *See also* Brian East, *Struggling To Fulfill Its Promise: The ADA At 15,* 68 Tex. B. J. 614 (July 2005).

[8]  *See also Rohr v. Salt River Project Agric. Improvement and Power Dist.*, 555 F.3d 850, 861 (9th Cir. 2009)("Beginning in January 2009, 'disability' was to be broadly construed and coverage will apply to the 'maximum extent' permitted by the ADA and the ADAAA"); *Verhoff v. Time Warner Cable, Inc.*, 299 Fed. Appx. 488, 492 n. 2 (6th Cir. Oct. 24, 2008) ("the definition of 'disability' in [the ADA] shall be construed in favor of broad coverage of individuals under this Act"); *Fournier v. Payco Foods Corp.*, 611 F. Supp. 2d 120, 129 n. 9 (D.P.R 2009)("The overarching purpose of the act is to reinstate the 'broad scope of protection' available under the ADA"); *Kingston v. Ford Meter Box Co., Inc.*, 2009 U.S. Dist. LEXIS 31710, **11-12 (N.D. Ind. April 10, 2009)(similar); *Brodsky v. New England School of Law*, 617 F. Supp. 2d 1, 4 (D. Mass 2009)("the ADA amendment is undoubtedly intended to ease the burden of plaintiffs bringing claims pursuant to that statute").

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                     **Page 14**

**NOTE: The Regulations also state that cancer will "consistently" meet the definition of disability.** *See* **Regulations (Ex. A) at 29 C.F.R. §1630.2(j)(5)(i), 74 Fed. Reg. at 48441.**

The ADAAA also returns courts' focus to where it properly belongs – on the conduct of the defendant employer. The Act provides that the primary subject in ADA cases should no longer be on whether a plaintiff does or does not have a disability; "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *See* The ADA Amendments Act of 2008 **(Ex. G),** Pub. L. 110-325, §2(b)(5), 122 Stat. 3553 (Sept. 25, 2008), set out in the Note to 42 U.S.C. §12101. *See also Hoffman,* 2010 U.S. Dist. LEXIS at *21. Instead, the proper focus should be on "whether [covered entities like ALC] have complied with their obligations." *Id.* [9]

In enacting the ADAAA, Congress expressly disapproved and overturned several Supreme Court decisions, including *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) – ALC cites this case in the Motion (p. 8) – that it perceived were overly restrictive. *See* The ADA Amendments Act of 2008 **(Ex. G),** Pub. L. 110-325, §§2(a)(5) and (b)(4), 122 Stat. 3553 (Sept. 25, 2008), set out in the Note to 42 U.S.C. 12101. *See also Gil v. Vortex, LLC,* 697 F. Supp. 2d 234, 238 (D. Mass 2010)("Congress took particular umbrage at . . . *Sutton* . . . and *Toyota Motor* . . . ."), and *Cook v. Equilon Enters., L.L.C.*, 2010 U.S. Dist. LEXIS 113871, *17 (S.D. Tex. Oct. 26, 2010) ("The ADAAA rejected what Congress perceived to be the Supreme Court's unduly restrictive approach").

---

[9] *See also Litigating Employment Discrimination Cases,* James Publishing, Inc. (2009) at § 1:93 (Congress enacted the ADAAA, in part, "to direct the focus to whether a qualified individual has been discriminated against, rather than on whether the individual is a person with a disability").

**Michael J. Norton's Response to
Defendant's Motion For Partial Summary Judgment
and Brief in Support**                                                                 **Page 15**

2.      **The ADAAA broadens the interpretation of the phrase "substantially limits"**

a.      **past standards rejected**

The ADAAA rejects the holding in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) that the term "substantially" in the definition of "disability" under the ADA must "be interpreted strictly to create a demanding standard for qualifying as a disability." *See* The ADA Amendments Act of 2008 (**Ex. G**), Pub. L. 110-325, §2(b)(4), 122 Stat. 3553 (Sept. 25, 2008), set out in the Note to 42 U.S.C. §12101. The ADAAA also rejects the view that "substantial" requires proof of a restriction that is severe. *Id.*

The ADAAA states that the *Toyota Motor* standard for assessing "substantially limits," both in the Supreme Court and as applied by lower courts in numerous decisions, "has created an inappropriately high level of limitation necessary to obtain coverage under the ADA." *See* The ADA Amendments Act of 2008 (**Ex. G**), Pub. L. 110-325, §2(b)(5), 122 Stat. 3553 (Sept. 25, 2008), set out in the Note to 42 U.S.C. §12101.[10]

The Regulations are consistent. They state that "[a]n impairment need not prevent, or significantly or severely restrict . . . a major life activity in order to be considered a disability." *See* Regulations (**Ex. A**) at 29 C.F.R. §1630.2(j), 74 Fed. Reg. at 48440.

b.      **broad construction mandated**

"Substantial limitation," like all of the terms found in the ADA's definition of "disability,"

---

[10] The Findings in the ADAAA also disapprove of the EEOC's Title I regulation that defines the term "substantially limits" to mean "significantly restricted;" Congress found that this sets too high a standard. Pub. L. 110-325, §2(a)(8), 122 Stat. 3553 (Sept. 25, 2008), set out in the Note to 42 U.S.C. §12101. One explicit purpose of the ADAAA is to reject that standard. Pub. L. 110-325, §2(b)(6), 122 Stat. 3553 (Sept. 25, 2008), set out in the Note to 42 U.S.C. §12101.

**Michael J. Norton's Response to
Defendant's Motion For Partial Summary Judgment
and Brief in Support**                                    **Page 16**

must be construed as broadly as possible. *See* 42 U.S.C. §12102(4)(A). *See also e.g., Franchi v. New Hampton School*, 656 F. Supp. 2d 252, 258-59 (D.N.H. 2009)(sufficient showing that eating impairment substantially limited plaintiff's eating under the ADAAA's new broad construction); *Pridgen v. Department of Pub. Works/Bureau of Highways,* 2009 U.S. Dist. LEXIS 111424, **15-16 n. 17 (D. Md. Dec. 1, 2009) ("Under the ADA Amendments Act of 2008, a person who has lost sight in one eye but retains full use of his other eye is 'disabled.' Disability is to be construed 'in favor of broad coverage . . . ."). *See also* Regulations (**Ex. A**) at 29 C.F.R. §1630.2(j)(2)(i), 74 Fed. Reg. at 48440 ("the term 'substantially limits' . . . shall be construed in favor of broad coverage of individuals to the maximum extent permitted by the terms of the ADA and should not require extensive analysis").

Substantial limitations should be measured against "most people in the general population." H.R. Rep. 110-730, Pt. I, 110th Cong., 2d Sess., at p. 9 (June 28, 2008)(describing the legislative history of the original ADA). In defining "substantially limited," the Regulations also use the phrase "most people," and they emphasize that "[t]he comparison of an individual's limitation to the ability of most people in the general population often may be made using a common-sense standard, without resorting to scientific or medical evidence." *See* Regulations (**Ex. A**) at 29 C.F.R. §1630.2(j)(2)(iv), 74 Fed. Reg. at 48440.  *See e.g., EEOC v. AutoZone, Inc.,* 2010 U.S. App. LEXIS 26410 (7th Cir. Dec. 30, 2010) (plaintiff need not present medical testimony to raise a triable issue that he is substantially limited in a major life activity).

### 3.    The ADAAA includes episodic conditions and those in remission

An impairment that is episodic or is in remission is now a disability if it would substantially

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                                      **Page 17**

limit a major life activity when active. 42 U.S.C. §12102(4)(D), as amended. The Regulations are consistent. They state that examples of impairments that may be episodic "include, but are not limited to, impairments such as . . . cancer . . . ." *See* Regulations (**Ex. A**) at 29 C.F.R. §1630.2(j)(4), 74 Fed. Reg. at 48441.  *See also Hoffman*, cited *supra* (same).

### 4.    The ADAAA expands the definition of "major life activities"

As previously noted, one purpose of the ADAAA was to reject the analysis in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002), which held that the term "major" in the ADA's definition of disability must be interpreted strictly to create a demanding standard for disability, and that the term refers only to "activities that are of central importance to most people's lives." Thus, these standards no longer apply.

Under the ADAAA, the phrase "major life activities" now includes, among things, "the operation of a major bodily function, including but not limited to, . . . , normal cell growth, . . . ." 42 U.S.C. §12102(2)(B), as amended.  The Regulations are consistent. *See* Regulations (**Ex. A**) at 29 C.F.R. §1630.2(i)(2), 74 Fed. Reg. at 48440 ("cancer affects normal cell growth").

The ADAAA provides that a plaintiff needs to identify one and only one major life activity to have a disability. 42 U.S.C. §12102(4)(C), as amended. This confirms that an individual is not excluded from coverage because of an ability to do many things, so long as the individual is substantially limited in one major life activity. Further, the Regulations state, "The determination of whether an individual has a disability does not depend on what an individual is able to do in spite of an impairment." *See* Regulations (**Ex. A**) at 29 C.F.R. §1630.2(j)(6)(i)(C), 74 Fed. Reg. 48442.

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                          **Page 18**

### B.       Application

To satisfy its summary judgment burden, ALC as movant must show that Norton's cancer can <u>never</u> be a "disability" as defined by the ADA. ALC cannot do this. Instead, a straightforward, three-step application of the statute – specifically, 42 U.S.C. §12102(1)(A), which defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities" [11] – compels the conclusion that Norton was actually disabled for ADA purposes at the time of his discharge.

*Step One.* Norton had a physical impairment. That impairment was renal cancer. The medical records make this plain, and ALC has offered no evidence *contra.* Even a case decided under the original ADA, cited in the Motion at p. 8,  *Ellison,* 85 F.3d at 190, states, "It is undisputed that [plaintiff's] cancer was an 'impairment'."

Thanks to the ADAAA, this Court need not proceed any further in concluding that Norton had an actual ADA disability. That is because there can be no reasonable dispute that cancer, when active, constitutes a disability. *See and compare Hoffman,*  2010 U.S. Dist. LEXIS at *22. Further, and as previously noted, the Regulations state that under the ADA cancer "will ***consistently*** meet the definition of disability."  *See* Regulations (**Ex. A**) at 29 C.F.R. §1630.2(j)(5)(i), 74 Fed. Reg. at 48441. (Emphasis added).

*Step Two.* If the Court finds that further analysis is required, then the second step would involve analysis of the phrase "major life activity." On this matter, Congress has clearly spoken – the plain language of the statute expressly identifies "normal cell growth" to be a major life activity.

---

[11] *See* footnote no. 3, *supra.*

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                                                          **Page 19**

*See* 42 U.S.C. §12102(2)(B). That is the major life activity on which Norton relies.

*Step Three.* The third step is to ascertain whether Norton's impairment (renal cancer) limited the major life activity of Norton's normal cell growth to a degree that is "substantial." The answer is clearly yes. As previously noted, "substantial limitation," like all of the terms found in the ADA's definition of "disability," must be construed as broadly as possible. *See* 42 U.S.C. §12102(4)(A). Also as previously noted, whether Norton's limitation is "substantial" is determined by comparing Norton to "most people in the general population" without resorting to scientific or medical evidence." *See* Regulations (**Ex. A**) at 29 C.F.R. §1630.2(j)(2)(iv), 74 Fed. Reg. at 48440; *see also AutoZone, Inc.,* cited *supra.* In this regard, Norton's renal cancer clearly qualifies. Obviously, the cell growth in most people in the general population would differ "substantially" from the cell growth of a person who is suffering from cancer. Indeed, abnormal cell growth is implicit in the definition of the word "cancer." *See* dictionary.com, which defines cancer to mean "a malignant and invasive ***growth*** or tumor") (Emphasis added).

Thus, based on the foregoing three steps, the record conclusively establishes that Norton is actually disabled under the ADA.

### 1.     EEOC's cause determination warrants denial of the Motion

The parties agree that on May 3, 2010 the EEOC issued a "cause" determination. For the Court's convenience, a true and correct copy of this cause determination, which is already in the Court's file,[12] is attached hereto as **Exhibit F**.

---

[12]  *See Norton's First Am. Compl.* (Doc. 18) at ¶¶44-45 and Ex. F. *See also Defendant's Orig. Ans. To Pl.'s First. Am. Compl.* (Doc. 24) at 44-45 (admitting the allegations contained in ¶¶44 and 45 of Norton's First. Amended Complaint).

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                                                                     **Page 20**

The EEOC found reasonable cause to believe that ALC had discriminated against Norton on the basis of an actual disability. If the EEOC can make such a finding, so can a jury.

### 2.    Norton requests a finding that he is actually disabled under the ADA

The evidence discussed herein conclusively establishes that Norton had an actual disability as defined by the ADA. Accordingly, Norton asks that the Court, after giving notice to ALC, as well as a reasonable time for ALC to respond, enter an order finding that Norton suffered from renal cancer, and that his cancer represents an actual disability under the ADA. The Court is authorized to enter such an order pursuant to FED. R. CIV. P. 56(f).

## VII.   Conclusion

Norton asks that the Motion be denied in its entirety. Norton also asks that the Court enter a finding pursuant to FED. R. CIV. P. 56(f) that by reason of his renal cancer, Norton was actually disabled under the ADA at the time ALC discharged him.

Date: February 1, 2011

Respectfully submitted,

/s/

By: _____
       Wade A. Forsman
       *Attorney-in-Charge*
       State Bar No. 07264257
       P.O. Box 918
       Sulphur Springs, TX 75483-0918
       Tel: 903.689.4144
       Fax: 903.689.7001
       forsmanlaw@verizon.net

       **Attorney for Michael J. Norton, Plaintiff-Counter-defendant**

**Michael J. Norton's Response to
Defendant's Motion For Partial Summary Judgment
and Brief in Support**                                                                                      **Page 21**

## Certificate of Service

I certify that a copy of the foregoing document has been served upon the following counsel of record pursuant to the Federal Rules of Civil Procedure and the Local Rules on this the 1st **day of February 2011**: Jay M. Wallace of Gibson, McClure, Wallace & Daniels, L.L.P., 8080 North Central Expressway, Suite 1300, L.B. 50, Dallas, TX 75206.

/s/

_____

Wade A. Forsman

**Michael J. Norton's Response to**
**Defendant's Motion For Partial Summary Judgment**
**and Brief in Support**                                    **Page 22**