**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MICHAEL J. NORTON | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:10-cv-00091 |
| | § | |
| ASSISTED LIVING CONCEPTS, INC. | § | |
| | § | |
| *Defendant.* | § | |

<u>**MEMORANDUM OPINION AND ORDER ON PENDING MOTIONS**</u>

Before the court are the following motions: (1) Assisted Living Concept, Inc.'s (ALC's) "Motion to Compel Discovery and Motion to Exclude" (Dkt. 12); (2) Norton's "Motion to Compel Answers to Interrogatories, and Request for Oral Hearing" (Dkt. 20); (3) Norton's "Motion to Compel Response to RFP No. 23, and Request for Oral Hearing" (Dkt. 32); (4) Norton's "Motion for Summary Judgment on ALC's Counterclaim for Conversion" (Dkt. 34); (5) Norton's "Motion for Partial Judgment on the Pleadings" (Dkts. 35 & 36); (6) ALC's "Motion for Partial Summary Judgment" (Dkt. 37); (7) Norton's Request for a Rule 56(f) Order (Dkt. 45); (8) Norton's Objections to Evidence Offered in Support of ALC's Motion for Partial Summary Judgment (Dkts. 45 & 47); (9) Norton's Motion in Limine (Dkt. 49); (10) ALC's Motion in Limine (Dkt. 50); and (11) Norton's "Objections and Motion to Strike ALC's Proposed Exhibits" (Dkt. 58).

**I. BACKGROUND**

This is an employment discrimination suit brought under the Family and Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA). Plaintiff Michael J. Norton began

working for Defendant ALC in May of 2008. Operating over 200 facilities in twenty states, ALC

provides assisted living services to the elderly. Norton worked at ALC's "Hopkins House"

facility in Sulphur Springs, Texas as a "Residence Sales Manager" and was responsible for

attracting people to reside at the facility.

In April of 2009, Norton was diagnosed with a cancerous tumor on his left kidney. After

obtaining permission from ALC, Norton went on medical leave and underwent surgery on May

22, 2009. Norton returned to work on July 1, 2009. On August 5, 2009, ALC fired Norton. ALC

alleges that Norton was fired because of his poor job performance. Norton alleges that he was

fired for taking medical leave and because he suffered from cancer.

Norton filed a charge of discrimination with the U.S. Equal Employment Opportunity

Commission (EEOC) in October of 2009. *See* Dkt. 18-4. On May 3, 2010, the EEOC issued a

determination as to the merits of Norton's charge, finding reasonable cause to believe that ALC

had discriminated against him. *See* Dkt. 18-6. After the parties unsuccessfully attempted to

mediate the dispute on September 9, 2010, the EEOC sent Norton a "Notice of Right to Sue"

letter on November 1, 2010. *See* Dkts. 18-7 & 18-8. Norton originally filed this action in state

court on January 29, 2010, and ALC removed it to this court on March 2, 2010.[1]

## II. ANALYSIS OF PENDING MOTIONS

## A. ALC's "Motion to Compel Discovery and Motion to Exclude" (Dkt. 12).

This motion pertains to both interrogatories and requests for production that ALC has

---

[1]Norton's original complaint (Dkt. 2) included only a claim under the FMLA because, unlike a claim under the ADA, an FMLA claim has no administrative prerequisites. *See infra* subpart E. Upon receiving the "Notice of Right to Sue" letter from the EEOC, Norton amended his complaint to add a claim under the ADA. *See* Dkt. 18.

sent Norton.

**1. ALC's Interrogatories**

Norton has lodged objections to almost all of ALC's first set of interrogatories. ALC argues that Norton's objections lack merit and urges the court to compel Norton to remove the objections. Despite his objections, Norton answered ALC's interrogatories. The court finds that because Norton responded to the interrogatories, he waived his objections to them. Accordingly, it was not necessary for ALC to file a motion to compel Norton to remove the objections. As such, ALC's motion to compel Norton to remove the objections is **DENIED** as moot.

ALC's motion also urges the court to compel Norton to file adequate responses to its interrogatories. However, the motion fails to address how any of Norton's responses are inadequate. Rather, ALC's arguments focus on Norton's objections to the interrogatories. Consequently, to the extent that ALC's motion seeks to compel Norton to file adequate responses to its interrogatories, the motion is **DENIED**.

**2. ALC's Requests for Production (RFP)**

As he did with ALC's first set of interrogatories, Norton has lodged objections to almost all of ALC's first RFPs. ALC argues that Norton's objections to its RFPs lack merit and urges the court to compel Norton to remove the objections. Despite his objections, Norton answered ALC's RFPs. The court finds that because Norton responded to the requests, he waived his objections to them. Accordingly, it was not necessary for ALC to file a motion to compel Norton to remove the objections. As such, ALC's motion to compel Norton to remove the objections is **DENIED** as moot.

ALC also urges the court to compel Norton to file adequate responses to its RFPs. The

court finds that this motion is limited to the instances where ALC's motion actually addresses how Norton's responses were inadequate, namely, Norton's responses to RFP numbers 15, 16, 17, and 18. Norton responded to these RFPs by stating that "[p]roduction will be permitted as requested." *See* Dkt. 12-2. ALC objects to these responses, arguing that "[b]y definition, in making the Request for Production to begin with, ALC has requested the documents." Dkt. 12., pg. 13. However, the court finds that Federal Rule of Civil Procedure (FRCP) 34(b)(2)(B) permits the responses Norton gave to these RFPs. Under that rule, a party must respond to each item in a RFP by either "stat[ing] that inspection and related activities will be permitted as requested or state an objection to the request . . . ." ALC now has the responsibility to make arrangements with Norton to view or copy the requested documents. Norton must, of course, cooperate. Accordingly, to the extent that ALC's motion seeks to compel Norton to file adequate responses to these RFPs, the motion is **DENIED**.

**B. Norton's "Motion to Compel Answers to Interrogatories, and Request for Oral Hearing" (Dkt. 20).**

The parties have resolved all but two of the disputed interrogatories in this motion. *See* Dkt. 31, pg. 1. The remaining two are discussed below.

**1. Interrogatory No. 10**

This interrogatory requests that ALC,

Give the forum, the cause or case number, and the style for all cases, lawsuits, arbitrations, or other proceedings where any current or former employee of yours other than Norton has alleged, in whole or in part, that you violated the Family and Medical Leave Act . . . . [t]his interrogatory is limited in time to the last five years.

Dkt. 20-1.

ALC answered the interrogatory by stating, "ALC objects to this Interrogatory to the extent it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objection, as to the facility in question, none." *Id.* ALC subsequently expanded the geographic scope of its answer to include all of the facilities in the company region that includes the Hopkins House. *See* Dkt. 30-1.

Norton argues that ALC's objections lack merit and that its answer is inadequate. Regarding ALC's answer, Norton argues that ALC should expand its response from the region that includes the Hopkins House to all of the company's facilities nationwide. Norton argues that a nationwide response is necessary because, as ALC conceded in its response to another interrogatory, the decision to fire him was made by ALC employees at the corporate, regional, and divisional levels of the company. In response, rather than responding to Norton's argument, ALC merely describes the size of the company and repeats its objection that Norton's request is "overbroad, unduly burdensome, and is not likely to lead to the discovery of admissible evidence." Dkt. 30, pg.2. ALC does not explain how responding to Norton's request would be unduly burdensome or how it is unlikely to lead to admissible evidence. A discussion with counsel in other FMLA cases against ALC may be helpful to Norton and lead to the discovery of admissible evidence concerning the instant case.

The court agrees with Norton. Accordingly, Norton's motion to compel regarding Interrogatory No. 10 is **GRANTED**.

**2. Interrogatory No. 12**

This interrogatory requests that ALC,

Give the name, address and telephone number for each person (with the exception

of your attorneys or your attorneys' agents or representatives) you have had any communication with, in whole or in part, concerning any of the following topics -

A. Norton and renal cancer he may be suffering from; or
B. Norton and any hernia he may be suffering from; or
C. Norton and any serious health condition he may be suffering from and

for each person identified, give the date(s) of each communication, and describe the substance thereof.

Note: If any person identified in your answer is currently on your payroll, then his/her work address and telephone number is sufficient. If the person identified in your answer is not currently on your payroll, then provide his/her last-known personal address and telephone number.

Note: The phrase "serious health condition" has the same meaning here as the definition found in 29 U.S.C. §2611(11).

Dkt. 20-1.

ALC answered the interrogatory by stating, "[a]s 'you' is defined as all ALC employees, ALC objects to this Interrogatory to the extent it is overly broad - ALC cannot possibly know what each and every one of its employees may have discussed. Subject to and without waiving the foregoing objection, will supplement, if any." *Id.*

Norton argues that ALC's objections lack merit and that its answer is inadequate. The court agrees with ALC and finds that its objection has merit. Accordingly, Norton's motion to compel regarding Interrogatory No. 12 is **DENIED**.

Having addressed the two interrogatory disputes that remain from Norton's motion to compel (Dkt. 20), the court finds that Norton's request for an oral hearing on the motion, also included in Dkt. 20, is moot and therefore **DENIED**.

## C. Norton's "Motion to Compel Response to RFP No. 23, and Request for Oral Hearing" (Dkt. 32).

RFP No. 23 requests that ALC,

[P]roduce each and every written evaluation or job assessment, regardless of appellation, that you prepared or had prepared on each person identified in your answer to Number One of *Norton's Interrogatories To ALC*.

NOTE: This request is limited temporally to five years before the effective date of Norton's discharge, as set forth in your answer to Number Seven of *Norton's Interrogatories To ALC*.

Dkt. 32-1.

Norton's Interrogatory No. 1 asked for the identity of the ALC officials who participated in the decision to fire Norton. In its answer ALC identified six such individuals. *See* Dkt. 20-1.

ALC's original response to RFP No. 23 was that "ALC objects to this Request to the extent it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence and for the reason that it impermissibly seeks to invade the privacy rights of individuals not a party to this suit." *Id.* ALC subsequently amended its response and added the following sentence: "Subject to and without waiving the foregoing objection, as to [five of the individuals named by ALC in response to Norton's Interrogatory No. 1], none. Further, subject to and without waiving the foregoing objections, as to Becky Edwards [the remaining individual named by ALC], no evaluations discussing any ADA or FMLA related issues." Dkt. 39-1.

Norton argues that ALC's objections lack merit and that its response is "highly suspect." Dkt. 42, pg. 3. The court will not address Norton's arguments about ALC's objections to the RFP because the court finds that by responding to it ALC waived its objections. Regarding ALC's response, Norton questions the truthfulness of ALC's representation that over the past five years it prepared no written evaluation or job assessment, regardless of appellation, on the first five individuals named by ALC in its response to Norton's Interrogatory No. 1. Norton further

suggests that ALC has been withholding documents during discovery in this case, and that ALC may not have understood that Norton was seeking all evaluations and assessments, not just formal, annual reviews. The court finds Norton's argument unpersuasive. The court will not order ALC to respond again to the RFP merely because Norton thinks, without evidentiary support, that ALC's current answer is incredulous or that it may have misunderstood the request. Accordingly, Norton's motion to compel a response to RFP No. 23 regarding these five individuals is **DENIED**.

As for ALC's response regarding Becky Edwards, the only individual for which ALC admits to having a written evaluation or job assessment, Norton argues that ALC improperly limited it to evaluations and assessments discussing ADA or FMLA related issues. ALC justified this limitation by arguing that "Edwards is not a co-worker or comparator of Norton. As such, Edwards' performance evaluations . . . are entirely irrelevant as to any issue in this case . . . . [and] [t]he only conceivable discoverable evaluations would concern complaints regarding ADA or FMLA issues related to employees Edwards supervised." Dkt. 39, pg. 2. In response, Norton cites three decisions in which federal courts approved discovery of the entire personnel files of managers who, like Edwards, participated in the termination of the aggrieved party: *Phillips v. Berlex Labs., Inc.*, 2006 U.S. Dist. LEXIS 27389, **9-10 (D. Conn. May 5, 2006); *Hill v. Motel 6*, 205 F.R.D. 490, 494-95 (S.D. Ohio 2001); and *Lyoch v. Anheuser-Busch Cos.*, 164 F.R.D. 62, 68-69 (E.D. Mo. 1995). Dkt. 42, pg. 2. ALC did not respond to these authorities, nor did it offer any authority of its own. Nevertheless, the court finds that the resolution of this case should turn on whether or not ALC had a legitimate, non-discriminatory reason to terminate Norton's employment and not on any job performance evaluations of Ms. Edwards, who participated in the

decision to terminate Norton. Accordingly, the court finds that Norton's motion to compel a response to RFP No. 23 regarding Becky Edwards should be **DENIED**.

Having addressed Norton's motion to compel a response to RFP No. 23 (Dkt. 32), the court finds that Norton's request for an oral hearing on the motion, also included in Dkt. 32, is moot and therefore **DENIED**.

**D. Norton's "Motion for Summary Judgment on ALC's Counterclaim for Conversion" (Dkt. 34).**

ALC brought a counterclaim for conversion in its "Original Answer to Plaintiff's First Amended Complaint" (Dkt. 24). The counterclaim is based on an allegation that after Norton's employment was terminated he wrongfully took a record summarizing the occupancy rate at the ALC facility in which he worked. Norton has moved for summary judgment on the counterclaim, arguing that the property at the basis of the counterclaim is intangible and, therefore, outside the scope of Texas conversion law. ALC did not respond to Norton's motion.

Despite ALC not responding to Norton's motion, the court finds that the motion should be denied. While it is true that Texas courts do not recognize a cause of action for conversion of intangible property, Texas courts have drawn an exception to that rule in cases where intangible information was merged into a document and that document was converted. *Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Servs.*, --- S.W.3d ----, 2011 WL 1044210, at *2 (Tex.App.—Houston [14th Dist.] 2011, no pet.). "Under this so-called 'merger exception,' Texas courts have recognized conversion claims involving the following types of intangible property: lease documents, *Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex.1983); confidential customer lists, *Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, 762 (Tex.App.—Texarkana

1996), *rev'd in part on other grounds*, 939 S.W.2d 146 (Tex.1997); and shares of stock, *Watts v. Miles*, 597 S.W.2d 386, 387–88 (Tex.App.—San Antonio 1980, no writ)." *Id.* The court sees no reason why the document at issue in ALC's counterclaim cannot fall within the boundaries of the merger exception as recognized by Texas courts. Accordingly, Norton's motion is **DENIED**.

### E. Norton's "Motion for Partial Judgment on the Pleadings" (Dkt. 36).

Norton seeks a judgment on the pleadings under FRCP 12(c) regarding paragraphs 76 and 84 in ALC's "Original Answer to Plaintiff's First Amended Complaint" (Dkt. 24).[2] "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

### 1. Paragraph 76

Paragraph 76 states: "ALC affirmatively states that Plaintiff's Original Petition fails in whole or in part because Plaintiff failed to meet all administrative prerequisites to bringing this suit."

Norton initially argued that this assertion must fail because the complaint it references, Norton's original complaint (Dkt. 2), had as its sole claim a claim under the FMLA, and there are no administrative prerequisites to bringing an FMLA claim. In its response, ALC clarified that paragraph 76 was supposed to refer to Norton's amended complaint (Dkt. 18), in which Norton added a claim under the ADA. Unlike a claim under the FMLA, there are administrative

---

[2]While Rule 12(c) does not expressly provide for partial judgment on the pleadings, the modern trend is for courts to permit motions for such relief. *See* 5C Wright & Miller, Federal Practice & Procedure § 1369 (3d ed. 2005). *E.g., Bradley v. Fontaine Trailer Co.*, No. 3:06-cv-62, 2009 WL 763548, at *2-3 (D. Conn. March 20, 2009); *New York v. Micron Tech., Inc.*, No. C 06-6436 PJH, 2009 WL 29883, at *3 (N.D. Cal. Jan. 5, 2009).

prerequisites to bringing a claim under the ADA. In reply, Norton argues that even if paragraph 76 was intended for his ADA claim, the assertion must fail because the pleadings conclusively demonstrate that Norton met all administrative prerequisites before bringing the ADA claim. ALC did not respond to this argument.

The ADA expressly adopts Title VII's administrative exhaustion requirement. *See* 42 U.S.C. § 12117(a). Thus, before filing a civil suit, a person seeking relief under the ADA must comply with the following administrative requirements: (1) file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice or within 300 days if the aggrieved party has initially instituted proceedings with an appropriate state or local agency; and, (2) obtain a notice of right to sue letter from the EEOC. 42 U.S.C. §§ 2000e-5(e)(1) & (f)(1).

In its "Original Answer to Plaintiff's First Amended Complaint" (Dkt. 24), ALC admitted the following allegations in Norton's "First Amended Complaint" (Dkt. 18): (1) ALC fired Norton effective August 5, 2009, ¶ 32; (2) Norton filed a charge of discrimination with the EEOC in October of 2009, ¶ 39; and (3) Norton received a notice of right to sue letter from the EEOC, dated November 1, 2010, ¶ 50.[3] The court finds that Norton's amended complaint alleges all the administrative prerequisites required for filing a claim under the ADA, and that ALC's admission of these allegations conclusively precludes it from asserting its "fail[ure] to meet all administrative prerequisites" argument. Accordingly, Norton's motion for judgment on the

---

[3]Paragraph 50 of Norton's "First Amended Complaint" actually states: "Exhibit H is a true and correct copy of a letter received by *ALC* from the U.S. Equal Employment Opportunity Commission, dated November 1, 2010, titled "Notice of Right to Sue (Conciliation Failure)." Dkt. 18. (emphasis added). However, contrary to what is stated in paragraph 50, Exhibit H is a copy of a notice of right to sue letter from the EEOC that was sent to Norton, not ALC. *See* Dkt. 18-8.

pleadings regarding that argument is **GRANTED**.[4]

## 2. Paragraph 84

Paragraph 84 states: "As a result of Plaintiff's unsupported claims against ALC, ALC has been required to retain the services of the undersigned attorneys, and pursuant to 42 U.S.C. § 2000e-5(k) and Federal Rule of Civil Procedure 11, ALC is entitled to an award of its reasonable attorneys' fees incurred defending this action."

Norton argues that ALC's reference to Rule 11 should be dismissed because ALC has not complied with the requirements of Rule 11, namely, that: (1) ALC did not give Norton twenty-one days notice before requesting sanctions with the court, as required by Rule 11(c)(2); (2) ALC did not file the motion for sanctions separately from any other motion, as required by Rule 11(c)(2); and (3) ALC did not describe the specific conduct that allegedly violates Rule 11, as required by Rule 11(c)(2). In response, ALC states only that "[p]ursuant to Rule 11, Norton is entitled to withdraw or appropriately correct its claims and show why Rule 11(b) has not been violated." Dkt. 43, pg. 3. The court agrees with Norton and finds that ALC has not complied with Rule 11. Accordingly, Norton's motion for judgment on the pleadings regarding ALC's reference to Rule 11 is **GRANTED**.

## F. ALC's "Motion for Partial Summary Judgment" (Dkt. 37).

ALC's motion for partial summary judgment pertains to Norton's claim under the ADA.

---

[4]The court also notes that ALC's assertion fails to meet the heightened pleading standard under FRCP 9(c), which states, "[w]hen denying that a condition precedent has occurred or been performed, a party must do so with particularity." Rather than identifying the particular failures of conditions precedent, ALC merely states that Norton's claim "fails in whole or in part because Plaintiff failed to meet all administrative prerequisites to bringing this suit." Dkt. 24., ¶ 76. However, because Norton did not allege this deficiency in its motion, the court declined to base its ruling on that ground.

In relevant part, the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to [the] . . . discharge of employees . . . ." 42 U.S.C. § 12112(a). Thus, to establish a prima facie case of discrimination based on disability under the ADA, a plaintiff must show that: (1) he suffers from a disability; (2) he is qualified for the job despite the disability; (3) he was subjected to an adverse employment action due to the disability; and (4) he was treated less favorably than non-disabled employees. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000). The Act defines a person with a "disability" as one who (1) has an actual "physical or mental impairment that substantially limits one or more major life activities of such individual" (the actual disability prong); (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment" (the regarded as prong). 42 U.S.C. § 12102(1). Norton's ADA claim is based on his cancer constituting a disability under prong one and, in the alternative, prong three.

In its motion, ALC argues that Norton did not have an actual disability as that term is defined in the Act and that Norton has failed to show that ALC regarded Norton as having such a disability. Therefore, ALC argues, Norton has failed to make a prima facie case of discrimination under the ADA. Accordingly, ALC seeks summary judgment on Norton's ADA claim.

In response, Norton withdrew prong three, the "regarded as" prong, as a basis for his ADA claim. Thus, the sole issue before the court is whether ALC's motion for summary judgment should be granted on the basis of Norton not having an actual disability, as that term is defined in the Act. Norton argues that Congress' recent amendments to the ADA operate to qualify his renal cancer as a disability under the Act, and, therefore, summary judgment is not

warranted. For the following reasons, the court agrees with Norton and finds that ALC's motion for summary judgment should be denied.

The ADA Amendments Act of 2008 (ADAAA) was signed into law by President George W. Bush on September 25, 2008, with a statutory effective date of January 1, 2009. Pub. L. No. 110-325, 122 Stat 3553. Passed in response to decisions by the U.S. Supreme Court that, according to Congress, had "created an inappropriately high level of limitation necessary to obtain coverage under the ADA," the ADAAA sought to reinstate "a broad scope of protection . . . available under the ADA." *Id.* at 3554 (citing *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999) and *Toyota Motor Mfg., Kentucky Inc. v. Williams*, 534 U.S. 184 (2002)).

The primary way in which Congress chose to broaden the scope of ADA coverage was to expand the law's definition of the term disability. Congress' stated purpose in expanding the definition of disability was to "convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Id.* This is because "the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations." *Id.*

While the ADAAA retained the three prong definition of disability, *see supra*, it significantly expanded the meaning of terms included in that definition. Thus, the Act expanded the meaning of terms under the actual disability prong, which, as stated previously, defines a person with a disability as one who has an actual "physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). For purposes of this case, the most significant changes to the ADA are as follows:

(1) The ADA now states that "[t]he definition of 'disability' [under the Act] shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms [of the Act]." 42 U.S.C. § 12102(4)(A).

(2) The definition of "major life activities" under the Act's actual disability prong was expanded to include the operation of "major bodily functions." 42 U.S.C. § 12102(2)(B). The Act now includes a sample list of major bodily functions that constitute a major life activity; this list includes "normal cell growth." *Id.*

(3) The Act emphasizes that the term "substantially limit" under the actual disability prong shall be interpreted as broadly as possible. 42 U.S.C. §12102(4)(A) & (B).

(4) The Act now clarifies that as long as an impairment substantially limits one major life activity, such as normal cell growth, it need not limit other major life activities, such as working, in order to be considered a disability. 42 U.S.C. §12102(4)(C).

(5) Finally, the Act explains that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity [such as normal cell growth] when active." 42 U.S.C. §12102(4)(D).

Applying the amended definition of disability under the actual disability prong to the facts in this case, the court concludes that Norton's renal cancer is capable of qualifying as a disability under the ADA. Neither side disputes that renal cancer, when active, constitutes a "physical impairment" under the statute.[5] Further, the court finds that renal cancer, when active,

_____

[5]This is consistent with the EEOC's implementing regulation defining a physical impairment as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special

"substantially limits" the "major life activity" of "normal cell growth." *See* 42 U.S.C. §12102(4)(A) & (B); 42 U.S.C. § 12102(2)(B). Therefore, that Norton may have been in remission when he returned to work at ALC is of no consequence. *See* 42 U.S.C. §12102(4)(D). Finally, Norton's renal cancer qualifies as a disability even if the only "major life activity" it "substantially limited" was "normal cell growth." *See* 42 U.S.C. §12102(4)(C).

The court's conclusion that Norton's renal cancer is capable of qualifying as a disability under the ADA is bolstered by the EEOC's interpretation and implementation of the ADAAA. The EEOC's final regulations implementing the amendments provide a list of impairments that, because they substantially limit a major life activity, will "in virtually all cases, result in a determination of coverage under [the actual disability prong]." 29 C.F.R. § 1630.2(j)(3)(ii) (effective May 24, 2011). One of the impairments listed is "cancer" because it "substantially limits [the major life activity] of normal cell growth." *Id.* at § 1630.2(j)(3)(iii). *See also* the EEOC's interpretive guidance accompanying its final regulations, 76 FR 16978-01, 2011 WL 1060575, at **17007, 17011, & 17012 (citing examples in the legislative history of the ADAAA where Congress named cancer as the kind of impairment that would qualify as a disability under the amended Act).

Because the ADAAA has only been effective since January 1, 2009, and did not apply retroactively, *Carmona v. Sw. Airlines, Co.*, 604 F.3d 848, 856 (5th Cir. 2010), there is a scarcity of decisions analyzing the ADA as amended by the ADAAA. However, the court decisions that

---

sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine . . . ." 29 C.F.R. § 1630.2(h)(1).

have been made support the court's conclusion in this case. For purposes of this case, the most persuasive of these decisions is *Hoffman v. Carefirst of Fort Wayne, Inc.*, 737 F.Supp. 2d 976 (N.D. Ind. 2010). In *Hoffman*, an employee who suffered from renal cancer brought suit against his employer alleging that the employer violated the ADA when it fired him. The employer moved for summary judgment, arguing that the employee had failed to establish a prima facie case of discrimination because the employee's cancer was in remission and, therefore, did not substantially limit a major life activity. Relying on the language quoted above from 42 U.S.C. §12102(4)(D) and the EEOC's proposed regulations implementing the ADAAA, the court denied the motion. *Id*. at 984-86. The court held that because the employee's renal cancer, when active, substantially limited the major life activity of normal cell growth, the employee was disabled under the ADA as amended.[6] *Id.*

See also *Feldman v. Law Enforcement Assocs. Corp.*, No. 5:10-cv-08-BR, 2011 WL 891446 (E.D.N.C. March 10, 2011) (holding that employee who suffered from episodic flare ups of multiple sclerosis (MS) had plausible claim of disability under the ADA as amended because when active, the MS substantially limited the employee's normal neurological functions, which is a major life activity under the amended Act); *Chalfont v. U.S. Electrodes*, No. 10-2929, 2010 WL 5341846 (E.D. Pa. Dec. 28, 2010) (holding that employee with leukemia, heart disease and

_____

[6]ALC argues that the *Hoffman* case is inapposite because the plaintiff in that case had Stage III renal cancer and because neither party disputed that Stage III renal cancer, when active, constitutes a disability. The record in this case is unclear as to the stage of Norton's cancer. Nevertheless, the court finds the distinction immaterial because cancer at any stage "substantially limits" the "major life activity" of "normal cell growth." And while it is true that neither party in the Hoffman case disputed that when active State III renal cancer constitutes a disability, this court fails to see, nor does ALC explain, how that fact should dissuade the court from its holding.

remissive cancer had plausible claim of disability under the ADA as amended because his maladies substantially limited his normal cell growth and circulatory functions, both of which are major life activities under the amended Act); *Horgan v. Simmons*, 704 F.Supp. 2d 814 (N.D. Ill. 2010) (holding that employee with HIV positive status had plausible claim of disability under the ADA as amended because the normal functioning of his immune system, a major life activity under the amended Act, was substantially limited).

Therefore, because Norton's cancer is capable of being classified as a disability under the ADA as amended, ALC's motion for partial summary judgment is **DENIED**.

## G. Norton's Request for Rule 56(f) Order (Dkt. 45).

In addition to urging the court to deny ALC's motion for partial summary judgment, Norton has requested that the court enter an order pursuant to FRCP 56(f) finding as a matter of law that Norton's renal cancer constitutes an actual disability under the ADA. ALC has offered no response to this request. Under the recently added Rule 56(f)(1), a court may on its own initiative grant summary judgment for a nonmovant after giving notice and a reasonable time to respond.[7] In this instance, while Norton has requested court action, he is the nonmovant under the Rule because he has not moved for summary judgment on the matter. The court will first address whether Norton's request is cognizable.

As discussed earlier, suffering from a disability is only one element of a claim of discrimination under the ADA. Courts have typically held that summary judgment is not

---

[7]The current version of Rule 56(f) was added as part of the package of amendments to the federal rules that became effective on December 1, 2010.

appropriate when directed towards particular elements of a single claim and not the whole claim. *See Doty v. Sun Life Assurance Co. of Canada*, No. H-07-3782, 2009 WL 3046955, at *1 (S.D. Tex. July 30, 2009) ("Rule 56 does not contemplate partial summary judgment as to portions of a single claim."). However, Rule 56 was amended effective December 1, 2010, and whereas former Rule 56(a) simply read that "[a] party claiming relief may move . . . for summary judgment on all or part of the claim," it now expressly recognizes that "[a] party may move for summary judgment, identifying each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought." (emphasis added). The Advisory Committee Note explaining this change states that it was "added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also to a claim, defense, or part of a claim or defense." In accordance with this change, district courts have begun to recognize motions for summary judgment that are directed towards matters of law that are less than all of a particular claim. *See, e.g., Isovolta Inc. v. Protrans Int'l, Inc.*, No. 1:08-cv-1319-JMS-DML, 2011 WL 221886, at *2 (S.D. Ind. Jan. 19, 2011). Accordingly, the court finds that Norton's request is cognizable.

The court also finds that Norton's request has merit. As discussed above, Norton's argument that his renal cancer constitutes a disability under the ADA as amended is well-founded in law. Therefore, Norton's request is **GRANTED**. Pursuant to Rule 56(f), notice is hereby given of the court's intention to grant summary judgment for Norton under Rule 56(f)(1) on the issue of his cancer constituting a disability under the ADA. ALC is given twenty days from the date of this order to respond to the court's notice. Norton is granted twenty days from the date of ALC's response, if any, to reply. The court will accept no other briefing on the matter.

**H. Norton's Objections to Evidence Offered in Support of ALC's Motion for Partial Summary Judgment (Dkts. 45 & 47).**

In response to ALC's motion for partial summary judgment, Norton has raised several objections to evidence offered by ALC in support of its motion. Because the court's denial of ALC's motion is based solely on the text of the ADA as amended and the undisputed fact of Norton's renal cancer, the court did not consider any of the complained of evidence in forming its conclusion. Consequently, the court finds that Norton's objections are moot and therefore **DENIED**.

**I. Norton's Motion in Limine (Dkt. 49).**

Norton has moved that ALC be prohibited from offering numerous matters at trial without first seeking a ruling from the court. ALC did not respond to Norton's motion. Local Rule CV-7(d) states that "[i]n the event a party fails to oppose a motion . . . , the court will assume that the party has no opposition." Accordingly, Norton's motion in limine is **GRANTED**.

**J. ALC's Motion in Limine (Dkt. 50).**

ALC has moved that Norton be prohibited from offering numerous matters at trial without first seeking a ruling from the court. In Norton's response to the motion, he points out that ALC's motion did not include a certificate of conference, as required by Local Rule CV-7(h)(i), and that he was never asked to meet and confer on the matters set forth in ALC's motion, as required by Local Rule CV-7(h). ALC offered no reply to Norton's response. Because the court finds that ALC apparently has not complied with Local Rule CV-7(h), and has not offered

any reasons for its failure to comply, its motion in limine is **DENIED**. The court notes that the deadline in this case for offering motions in limine, March 4, 2011, has passed. *See* Dkt. 10. Should ALC seek to reassert these matters, and they are not resolved after conferring with Norton, ALC is hereby granted leave to re-file a motion in limine within twenty days of this order. Said motion shall not exceed the scope of matters raised in Dkt. 50.

**K. Norton's "Objections and Motion to Strike ALC's Proposed Exhibits" (Dkt. 58).**

Pursuant to FRCP 26(a)(3)(B), Norton has objected to and moved to strike two exhibits identified by ALC in its Rule 26(a)(3) pretrial disclosure filing (Dkt. 51). The first contested exhibit is a one-page document marked as "ALC 1179," which, according to ALC, represents the census figures for the Hopkins House, the ALC facility in which Norton worked. The court gleans from the pleadings and briefing in this case that the term "census figures" refers to occupancy rate.

Norton objects to this proposed exhibit because ALC did not produce it until January 20, 2011, more than one month after the December 17, 2010 discovery deadline in this case. *See* Dkt. 10. Norton argues that under FRCP 37(c)(1), ALC cannot use the exhibit unless it can prove that its failure to timely produce was substantially justified or harmless. Under Rule 37(c)(1), a party that "fails to provide information . . . as required by Rule 26(a) or (e) . . . is not allowed to use that information . . . to supply evidence . . . at trial, unless the failure was substantially justified or harmless."

In response, ALC does not dispute that the document in question should have been disclosed under Rule 26(a) or (e). Rather, ALC suggests that its failure to disclose was harmless

because "Plaintiff has had the document at issue for two months[,] Plaintiff has taken no depositions, and thus has suffered no prejudice as a result of when the census figures were produced[, and] ALC had agreed to allow Plaintiff, should he choose to depose an ALC witness on the Hopkins House census figures . . . ." Dkt. 60, pg. 2.

In evaluating whether a violation of Rule 26 is harmless, courts in this circuit consider four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003). Factors one and three do not help the court resolve this dispute because the parties have not addressed the importance of the evidence and Norton has not sought a continuance. The fourth factor weighs against ALC because it has not explained its failure to disclose. Nevertheless, the court finds that the second factor compels it to deny Norton's motion to strike. The focus of the prejudice inquiry is on whether ALC's failure to comply with Rule 26 prejudiced Norton's ability to prepare for trial, not on whether Norton will be prejudiced by use of the evidence at trial. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 564 (5th Cir. 2004). The court finds that any such prejudice to Norton was negligible because the document at issue was designated as an exhibit before a trial date had even been scheduled. *See Texas A&M Research Found.*, 338 F.3d at 402. Thus, Norton has a sufficient amount of time to examine the document and prepare for its potential use at trial by ALC. Accordingly, Norton's motion to strike ALC 1179 is **DENIED**.

The second contested exhibit is a two-page "performance improvement plan" that ALC issued to Norton on July 23, 2009. Norton objects to the proposed exhibit because ALC never

produced it to him. ALC counters that it did not produce the document because it did not possess it, and that it only obtained possession of it when Norton himself produced it to ALC during discovery. Thus, ALC argues, it was not required to produce a document back to Norton when Norton produced the document to ALC in the first place. The court agrees with ALC. Norton has presented the court with no evidence that ALC possessed the document before it received it from Norton, nor has he presented any authority supporting his view that ALC had an obligation to produce the document back to him after receiving it from him. Accordingly, Norton's motion to strike the "performance improvement plan" exhibit is **DENIED**.

## III. CONCLUSION

For the foregoing reasons, the following motions are **DENIED**: (1) ALC's "Motion to Compel Discovery and Motion to Exclude" (Dkt. 12); (2) Norton's "Motion to Compel Response to RFP No. 23, and Request for Oral Hearing" (Dkt. 32); (3) Norton's "Motion for Summary Judgment on ALC's Counterclaim for Conversion" (Dkt. 34); (4) ALC's "Motion for Partial Summary Judgment" (Dkt. 37); (5) Norton's Objections to Evidence Offered in Support of ALC's Motion for Partial Summary Judgment (Dkts. 45 & 47); (6) ALC's Motion in Limine (Dkt. 50) (with leave to re-file); and (7) Norton's "Objections and Motion to Strike ALC's Proposed Exhibits" (Dkt. 58).

The following motions are **GRANTED**: (1) Norton's "Motion for Partial Judgment on the Pleadings" (Dkt. 36); (2) Norton's Request for Rule 56(f) Order (Dkt. 45); and (3) Norton's Motion in Limine (Dkt. 49).

The following motion is **DENIED** in part and **GRANTED** in part: Norton's "Motion to

Compel Answers to Interrogatories, and Request for Oral Hearing" (Dkt. 20).

**IT IS SO ORDERED.**

**SIGNED this the 13th day of May, 2011.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE